**L.K., J.M., H.B., H.Y., W.H., W.R., J.R., K.B. and J.E., on behalf of themselves and all others similarly situtated, Appellants,**

v.

**William GREGG, in his capacity as Commissioner of Veterans Affairs, et al., Respondents.**

**No. C6–85–1088, C5–85–1275.**

Court of Appeals of Minnesota.

Jan. 7, 1986.
Review Denied March 14, 1986.

M. Francesca Chervenak, Kathleen M. Davis, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Merwin W. Peterson, Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Appellants and the class they seek to represent are elderly or disabled veterans who resided or are residing in the Minnesota Veterans Home (home) in Minneapolis. After appellants received a letter from the home stating they would be discharged because of their "abilities and resources," they filed a class action suit seeking injunctive and declaratory relief. A temporary injunction was granted preventing discharges or transfers before the veterans obtained a hearing. Class status was denied. Subsequently all but two of the appellants attended informal review "hearings" prior to their discharge or transfer dates. Although a number of appellants have voluntarily left the home, others still remain. (A separate appeal before this court involves one resident whom the home has unsuccessfully attempted to remove through various means. *See Higgins v. Turnbill*, No. C4–85–1106.) The district court granted the respondents' motion for summary judgment and entered judgment dismissing all claims, ruling that it lacked jurisdiction. The veterans appeal the summary judgment, the denial of the class certification, and the dismissal of their remaining claims. Appellants have also petitioned this court (C5–85–1275), pursuant to Minn. Stat. § 14.44 (1984), for a declaratory judgment on the validity of respondent Commissioner's rules governing discharge of residents from the home. We reverse and remand.

## FACTS

Appellants reside in the Minnesota Veterans Home in Minneapolis. Part of the home is licensed as a domiciliary residence (dormitory-type living with limited medical care) and part is licensed as a nursing home. The home is open to veterans who are without adequate means of support and unable by reason of wounds, disease, old age, or infirmity to maintain themselves. Minn.Stat. § 198.022(1) (1984). (Certain family members may also be admitted under Minn.Stat. § 198.022 (1984).) In addition, veterans otherwise eligible for admission, except they have a means of support, are eligible under Minn.Stat. § 198.03 (1984) to reside in the home under a contract with the Commissioner providing for payment of reasonable compensation.

Respondents, the Commissioner of Veterans Affairs and the home administrator, state that a shortage of space and increasing demand for nursing home care require the conversion of one building at the home from domiciliary to nursing care. This decision required transfer to the Hastings facility or discharge of some of its residents. 1984 Minn.Laws, ch. 654, § 19(b) appropriated funds for the conversion.

Respondents state that a staff committee, composed of home employees, was cre-

ated at the home to determine who should be transferred or discharged. According to respondents, the "younger residents" who have undergone physical or mental therapy or have been treated for chemical dependency were targeted for transfer or discharge. In particular, respondents state the committee sought to discharge residents

who had achieved most of their goals and were ready to begin the move to independent living outside the home, who had no present medical problems, who were not using the facilities at the home, such as the AA or other support groups for the chemically dependent, and those who were simply using the home as a convenient residence.

Respondents also sought to discharge those with income who refused to pay maintenance charges.

According to appellants, K.B., W.R., W.H. and J.R. continue to reside in the home. K.B. (age 55) and W.R. (age 50) are both alcoholics. W.R. (age 29) is a paranoid schizophrenic. J.R. (age 36) is an unemployed Vietnam veteran undergoing treatment at the VA Hospital Agent Orange Clinic.

Five other appellants (J.M.-age 63; J.E.-age 63; L.K.-age 50 and chemically dependent; H.B.-age 63 described as "broke" and ill; and H.Y.-age 60 and chemically dependent) left the home some time after receiving their discharge letter. Appellants do not indicate if these individuals voluntarily left or felt compelled to leave because of the discharge letter.

On August 10, 1984, appellants were sent a letter from the administrator of the home (respondent Charles Turnbill) indicating they would be discharged/transferred by September 12, 1984. After this lawsuit was filed, the discharges were postponed to late September. Appellants obtained a temporary injunction prohibiting respondents from discharging them prior to their "review hearing" at the home. Some appellants received further postponements to November 27, 1984 and others apparently arranged discharge dates to accommodate

their personal situation (i.e., J.M. who voluntarily left, and L.K. who obtained a job and left).

According to appellants' complaint, about 20 other residents received similar discharge notices indicating they could request an independent review. These reviews were scheduled in October before the "Minnesota Veterans Home Outside Discharge/Transfer Review Committee," a committee specially created by the home following the initiation of this lawsuit.

Appellants initiated this suit before the review committee hearings occurred, seeking a permanent injunction and declaratory judgment. Appellants seek to permanently enjoin the respondents from discharging or transferring residents from the home until rules are properly promulgated under the Minnesota Administrative Procedures Act (MAPA) and until residents selected for discharge are afforded an opportunity to challenge their removal at a contested case hearing. Respondents admit that the Commissioner has not promulgated rules but indicated at oral argument that the Commissioner intended to do so. Appellants seek a declaratory judgment that the home is operating without the rules required to be promulgated by Minn.Stat. § 198.06 (1984), and cannot discharge or transfer residents except under such rules. Appellants also seek damages based on claims not addressed by the trial court. These include violation of due process rights and breach of contract. The trial court dismissed all of appellants' claims and entered judgment for respondents. This appeal followed.

### ISSUES

1. Did the district court have jurisdiction to determine appellants' claims?

2. Is the Commissioner required to promulgate rules?

3. Are appellants entitled to a contested case hearing before their transfer or discharge from the Minnesota Veterans Home?

4. Did the district court err in dismissing appellant's non-MAPA claims?

5. Did the district court err in denying appellants class certification?

## ANALYSIS

*Mootness*

 Although a number of appellants have voluntarily left the home, others apparently still reside in the home despite the attempted discharges/transfers. The MAPA claims raised by appellants who have voluntarily left the home are moot. However, the MAPA claims as to the remaining appellants continue to present a live controversy. In addition, we note that the Minnesota Supreme Court has declined to dismiss an appeal as moot where "the issues were 'capable of repetition evading review.'" *Matter of Peterson*, 360 N.W.2d 333, 335 (Minn.1984) (quoting *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)). Until rules are properly promulgated and residents of the home are afforded a proper hearing before their discharge or transfer, the rights of residents singled out for discharge or transfer will continue to be threatened.

### 1. *Jurisdiction*

 The district court held that Minn. Stat. §§ 14.44–.45 and §§ 14.63–.68 (1984) give the court of appeals, and not the district court, jurisdiction over appellants' MAPA claims.

Section 14.63 governs appeals by writ of certiorari to the court of appeals where a person is aggrieved by a final agency decision. Appellants did not appeal from an agency *decision*.[1] This suit was filed upon receipt of the letters indicating appellants would be transferred or discharged from

their domiciliary residence within 30 days. Appellants challenged the *process* by which they were to be discharged/transferred, seeking a declaratory judgment and a permanent injunction to prevent their removal before the promulgation of rules and before they receive contested case hearings. *See also Miller v. City of St. Paul*, 363 N.W.2d 806, 810 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. April 26, 1985).

Section 14.44 clearly gives the court of appeals jurisdiction when the validity of a "rule" is challenged. This section states:

The validity of any rule may be determined upon the petition for declaratory judgment thereon, addressed to the court of appeals, when it appears that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner * * *.

Here, both parties agree that the Commissioner has failed to promulgate rules relative to the discharge or transfer of home residents. We cannot review what does not exist. The declaratory judgment sought directly from this court by appellants in appeal C5–85–1275 is premature. Appellants' claims were properly addressed to the district court in this suit since the district court has original jurisdiction to consider their claims. *See* Minn. Const. art. 6, § 3.

### 2. *Rules Required*

Based on the issues, it is essential to settle the law with respect to the Commissioner's duty and the rights of residents of the home to avoid a multiplicity of suits and endless litigation.

Minn.Stat. § 198.06 (1984) requires the Commissioner to promulgate rules regarding the home:

The Minnesota veterans home shall be governed by the commissioner and is under the management of the administra-

---

1. Respondents argue that the hearings before the ad hoc committee at the home to determine whether appellants should be discharged or transferred are res judicata as to all related issues since appellants failed to appeal from these decisions. We disagree. *See AFSCME Council 96 v. Arrowhead Regional Corrections Board*, 356 N.W.2d 295, 299 (Minn.1984) (neither res judicata nor collateral estoppel is rigidly applied where an agency acts in a judicial or quasi-judicial capacity).

tor. \* \* \* The commissioner shall determine policy and shall adopt and enforce rules for the government of the home and proper bylaws for the conduct of its business. *The commissioner shall make rules not inconsistent with this chapter respecting the admission, maintenance, conduct and discharge of residents of the home,* and the disbursements of funds under its control. (emphasis supplied).

The legislature clearly directs the Commissioner to make rules regarding the discharge of residents. These rules should be consistent with the Veterans Home Act, which recognizes the eligibility of veterans and their family members to reside in the home, *see* Minn.Stat. §§ 198.01, 198.022, 198.03, and the residents' rights as tenants under Chapter 566. *See* Minn.Stat. 198.32 ("A resident of the home may not be denied any tenant rights available to him under chapter 566 \* \* \* ").

Minn.Stat. § 14.06 (1984) further directs the Commissioner to adopt rules regarding the procedures to be used:

> Each agency shall adopt rules, in the form prescribed by the revisor of statutes, setting forth the nature and requirements of all formal and informal procedures related to the administration of official agency duties to the extent that those procedures directly affect the rights of or procedures available to the public.

The Commissioner's rules on discharge and transfer of residents should also include the procedures that will be followed. *See Hanna Mining Co. v. Minnesota Public Utilities Commission,* 375 N.W.2d 550 (Minn.Ct.App.1985); *Matter of Implementation of Utility Energy Conservation Improvement Programs,* 368 N.W.2d 308, 313–14 (Minn.Ct.App.1985).

■ The informal policies adopted by the home's staff may not be used to discharge or transfer residents from the home. Minn.Stat. § 14.05, subd. 1 (1984) requires an agency to:

> [A]dopt \* \* \* its rules in accordance with the procedures specified in sections

14.01 to 14.70, and only pursuant to authority delegated by law and in full compliance with its duties and obligations \* \* \*.

A rule is defined as "every agency statement of general applicability and future effect \* \* \* adopted to implement or make specific the law enforced or administered by it \* \* \*." Minn.Stat. § 14.02, subd. 4 (1984). The home administrator has no authority to discharge or transfer residents except pursuant to the procedures and rules promulgated by the Commissioner. *See* Minn.Stat. 198.06 (1984).

3. *Contested Case Hearing*

Appellants assert the right to a contested case hearing before they may be discharged or transferred from the home. Section 14.02, subd. 3 defines a contested case as:

> [A] proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing.

"In any contested case all parties shall be afforded an opportunity for hearing after reasonable notice." Minn.Stat. § 14.58 (1984).

■ The rule in Minnesota is that a contested case hearing is afforded to one having a property or liberty interest at stake:

> A contested case hearing, however, may also be required by the constitution. In order to have a due process right to a hearing, a party must have a liberty or property interest at stake \* \* \*.

*Cable Communications Board v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658, 666 (Minn.1984). *See also Matter of Implementation of Utility Energy Conservation Improvement Programs* at 312–13. *Cable Communications* adopts the definition of property interest found in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which states:

> To have a property interest in a benefit, a person clearly must have more than an

abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Sections 198.01, 198.022, 198.03 "secure" and "support" the appellants' claim of entitlement to continued residency in the home once they are admitted. This entitlement cannot be taken away without the occurrence of a contested case hearing. *See Hanna Mining* at 553; *Matter of Implementation of Utility Energy Conservation Improvement Programs* at 312–13.

■ Appellants have a constitutional due process right to a contested case hearing before their discharge since they have "a statutory entitlement," once admitted, to continue residing in the home, if eligible, and since their discharge involves "state action that adjudicates important rights." *See Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970); *see also Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1491–93, 84 L.Ed.2d 494 (1985).

Veterans admitted to the Minnesota Veterans Home, except for those admitted under section 198.03, are persons "without adequate means of support." *See* Minn. Stat. § 198.022(1) (1984). All veterans seeking admission must be "unable by reason of wounds, disease, old age, or infirmi-

ty to properly maintain themselves." *Id.* Discharge of eligible veterans who are suffering and/or unable to support themselves may completely deprive them of a place to live. Residents of the Minnesota Veterans Home have a legitimate claim of entitlement to reside in the home pursuant to Minn.Stat. §§ 198.01, 198.022, 198.03. This special consideration and benefit for veterans and their families to housing at the Minnesota Veterans Home is provided by the State of Minnesota because of the honorable service rendered by the veteran to our country. The threat of discharge from the home thus involves "the legal rights, duties, or privileges of specific parties" which by law or constitutional right require due process. *See* Minn.Stat. §§ 14.02, subd. 3; 14.58 (1984). Thus, once admitted to the home, a resident is entitled to a contested case hearing before he or she can be discharged from the home. We note that veterans are entitled to a similar hearing under the Minnesota Veterans Preference Act, Minn.Stat. § 197.46 (1984).

We also recognize that residents selected for transfer may have a legitimate property interest entitling them to a pre-transfer contested case hearing. Once admitted to one of the homes, veterans and their family members expect to remain in that home. This expectation has been recognized as a property interest in *Klein v. Califano,* 586 F.2d 250 (3d Cir.1978). In *Klein,* the court held that federal (Medicaid) statutes created a *legitimate entitlement to continued residency* at the home of one's choice absent specific cause for transfer. *Id.* at 258. The court in *Klein* therefore held that due process requires that the Medicaid nursing home patient be given an opportunity to participate in the administrative process to determine whether the transfer is for his or her welfare.

■ Residents of the Minnesota Veterans Home have a protectible property interest to continue residing in the home to which they are admitted. Transferring residents without a prior hearing may cause transfers of persons who would face an unfair disruption of their personal and fam-

ily lives and may constitute a violation of due process rights.[2] Thus before residents are discharged or transferred from the home, their claim to eligibility must be considered at a contested case hearing.

### 4. *Non-MAPA claims:*

 Appellants assert various other non-MAPA claims in their brief including breach of contract and violation of the Minnesota Patient's Bill of Rights, Minn.Stat. § 144.651 (1984). Although none of these claims were briefed, the district court dismissed these claims with prejudice when it granted respondents summary judgment on the MAPA claims. The district court erred in dismissing these claims before they were considered on motion or at trial.

### 5. *Class Certification:*

Appellants seek to certify as a class, "all persons who presently reside at the Minnesota Veterans Home." The district court denied this request stating that appellants failed to meet the prerequisites of Rule 23.01 of the Minnesota Rules of Civil Procedure.

The obvious trouble with appellants' claim of a class action is that not all residents of the home have been subjected to or are threatened by the home's discharge/transfer policies. No injury is alleged with respect to *all* residents. In *General Telephone of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the United States Supreme Court stated: "We have repeatedly held that a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 156, 102 S.Ct. at 2370. *East Texas Motor Freight Systems, Inc. v. Rodriquez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216,

94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). Although appellants were selected for discharge or transfer from the home, there is no indication that all residents of the home will be subjected to similar treatment. Apparently, only 20 persons received the transfer/discharge notices, not the hundreds appellants seek to certify as a class.

### DECISION

The district court has original jurisdiction to consider all of the claims raised by appellants in their action seeking a declaratory judgment, permanent injunction and other relief. Class certification was properly denied. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

---

**2.** A limited exception to the requirement of a pre-termination hearing was recognized by the *Klein* court based on the case of *Caton Ridge Nursing Home, Inc. v. Califano,* 447 F.Supp. 1222 (D.Md.1978), *aff'd* 596 F.2d 608 (4th Cir. 1979). In *Caton Ridge Nursing Home,* the court held that no pre-transfer hearing is required when a Medicaid nursing home patient is transferred to another home solely for her own physical safety and there was no doubt about the existing hazards.