AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES COUNCIL 65, and Jeannette Ziegler, Appellants,

v.

**BLUE EARTH COUNTY,**
**Minnesota, Respondent.**

No. C2–85–2254.

Court of Appeals of Minnesota.

June 17, 1986.

Review Denied Aug. 20, 1986.

Gregg M. Corwin, St. Louis Park, for appellants.

Peter D. Bergstrom, St. Paul, for respondent.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, HUSPENI and NIEREN-GARTEN, JJ.

## OPINION

FOLEY, Judge.

This case involves the right of a non-probationary county employee to seek elective county office and the validity of a Blue Earth County personnel rule requiring that all such employees take an unpaid leave of absence upon filing as a candidate, regardless of the position sought. The union, American Federation of State, County and Municipal Employees (AFSCME), on behalf of county employee Jeanette Ziegler, appeals from an October 14, 1985 judgment upholding the rule as a reasonable restriction on the political activities of Blue Earth County employees, denying Ziegler's claimed entitlement to back wages accrued during her unsuccessful candidacy and dismissing its constitutional claims with prejudice. We reverse and remand.

## FACTS

In May 1984, the Blue Earth County Board of Commissioners (County), amended its Personnel Rules by adding Rule 10.2(F), which provides:

An employee appointed to a position other than to an elective office of Blue Earth County *upon filing as a candidate for a Blue Earth County elective office is required to take a leave of absence from employment without pay until the first business day following the election* at which the outcome of the election contest is determined. The leave of absence shall be subject to the following:

1. Such leave of absence shall be without prejudice to the employee's seniority ranking, classification, and pay rate.

2. During such leave of absence, the employee shall not be eligible for promotion.

3. The employee's insurance benefits shall continue during such leave of ab-

sence provided the employee submits the monthly insurance premium to Blue Earth County. (emphasis supplied).

The Rule was adopted in response to problems that arose when a deputy sheriff challenged his superior officer for elective office two years before. The stated purpose of the Rule is to insure "effective and efficient delivery of services to the residents of Blue Earth County" and to promote a "smooth and harmonious working relationship between elected officials and other employees within the department." Jeanette Ziegler, a county social worker for 17 years, filed for the office of County Commissioner on July 17, 1984. Under local election laws, she had three days, through July 20, to withdraw her name from the ballot.

The collective bargaining agreement between the union and the County grants the employer broad authority to "relieve employees due to * * * legitimate reasons; and to make and enforce reasonable rules and regulations * * *." Additionally, Blue Earth County Work Rule 15.1 states that the employer:

[M]ay establish, alter or amend any work rule, not in conflict with this Agreement, without prior conference with the Union * * * [c]opies of all written rules currently in effect or hereafter established by the Employer and any written changes therein, shall, upon adoption, be furnished to the Union and posted on employee bulletin boards.

After the County adopted Rule 10.2(F), minutes of the meeting were distributed to union representatives and a summary was published in the *Mankato Free Press*. The County also posted notice of the Rule at the employees' job sites. The timeliness of this latter action was disputed. Affidavits from Ziegler and 26 fellow employees alleged that copies of the Rule were not posted until after July 20, the last day Ziegler could remove her name from the ballot. Ziegler acknowledged however, that Ed Kunkel, County Personnel Director, informed her about Rule 10.2(F) on

that same date. Ziegler did not withdraw her name from the ballot.

On July 24, Kunkel notified Ziegler that her request to continue her employment while a candidate was denied and that she would be placed on an unpaid leave of absence the following day until November 7, the day after the election. On July 25, a union grievance, pursuant to the collective bargaining agreement, was filed on Ziegler's behalf. On August 13, 1984, the County formally denied the grievance, contending that the Agreement had expired on July 24, the strike maturity date, and that the action was appropriate on the basis of a published personnel rule. Subsequent requests for reinstatement and appeal to the personnel board were also denied. The union then moved the court for a temporary injunction and for an order compelling arbitration. On September 26, 1984, the court ordered the County to submit to arbitration or, at the union's option, proceed to a personnel board hearing. The union elected arbitration.

The arbitrator concluded initially that it had jurisdiction over the case since the cause of action arose prior to the strike maturity date and that even if the Agreement had expired, the delay in filing Ziegler's complaint was due to the County's own delay in enforcing the Rule. On the merits, the arbitrator concluded that Rule 10.2(F) did not "conflict" with the Agreement but instead fell within the employer's express right under Rule 15.1 to "establish, alter or amend any work rule." The arbitrator further concluded that notice was sufficient, although the County could have done a better job in disseminating this information. Finally, the arbitrator determined that although Ziegler was unaware of the Rule when she originally filed as a candidate, she was not prejudiced since she had the opportunity to withdraw her name from the ballot when Kunkel informed her of the Rule's requirements on July 20.

The union's appeal to the district court was confined to a claim that Rule 10.2(F) violated the procedural due process and equal protection clauses of the United

States and Minnesota constitutions, that it violated her first amendment right to seek public office and that it violated Minn.Stat. § 210A.081 (1984). The trial court initially determined that the union did not have standing to contest the reasonableness of Rule 10.2(F) since Ziegler was "guaranteed" her job and "all her rights if she did not win the election." However, the trial court went on to analyze the first amendment claim as it related to equal protection, stating that Rule 10.2(F) was a reasonable restriction on a county employee's right to run for the office of county commissioner in view of an inherent conflict of interest and that the Rule provided the least restrictive solution to meet the problem. It further concluded that Rule 10.2(F) did not conflict with the language in Minn.Stat. § 210A.081 providing that "[n]o political subdivision may impose or enforce any additional limitations on the political activities of its employees." This appeal followed.

## ISSUE

Does Blue Earth County Work Rule 10.2(F), which requires all non-probationary county employees to take an unpaid leave of absence when seeking county elective office, regardless of the position sought, violate procedural due process?

## ANALYSIS

■ We note from the outset that appellants' constitutional claims were properly before the district court for initial consideration and are now ripe for review by this court. The arbitrator had no authority to consider these claims.

The fact that we decline to interfere with the arbitration process does not confer upon the arbitrator the right to decide constitutional issues. We have already indicated that arbitrators are without such authority in Minnesota. *See City of Richfield v. Local No. 1215, Etc.,* 276 N.W.2d 42, 51 (Minn.1979). We now expressly hold this to be the rule in Minnesota irrespective of the language of the arbitration agreement. In the normal case, where the constitutional viola-

tions alleged are of a general nature, the arbitrator is to proceed. The alleged constitutional violations may be raised at the time of judicial review of the arbitration determination.

*McGrath v. State,* 312 N.W.2d 438, 442 (Minn.1981).

### Property Right

■ Claims based on a violation of procedural due process trigger a two-part analysis. First, a substantive right of life, liberty or property must be affected. If so, the second inquiry is, what process is due? *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Appellants contend that Ziegler has a property right in continued employment as established in *Cleveland Board of Education v. Loudermill,* 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and that Rule 10.2(F) operated to deprive her of that right without benefit of due process.

In *Loudermill,* a classified civil servant was discharged from his position as a security guard based on his alleged dishonesty in filling out an employment application. Loudermill was not afforded an opportunity to respond prior to his dismissal. Under the relevant state statute, such employees could only be dismissed "for cause" and were entitled to post-action review of the decision. The Court held that since Loudermill could only be dismissed "for cause," he had a property interest in continued employment. Employees facing the possibility of termination were therefore entitled to a prior opportunity to respond to the contemplated dismissal as well as post-review of the decision.

■ Although *Loudermill* dealt specifically with *discharge* and not temporary *suspension* of a public employee, we feel it is sufficiently analogous to the present case to lend support to appellants' position. Had this been a discharge case, *Loudermill* would clearly control and confer upon Ziegler a property right in continued em-

ployment.[1] We do not believe simply because Ziegler was involuntarily suspended due to her political activities rather than dismissed for disciplinary reasons, that she forfeited the opportunity to assert a right to which she was otherwise entitled. Respondent elected to confer a property right in continued employment upon non-probationary county employees. When it acts to place a senior employee on a mandatory leave of absence, that right is affected and cannot be deprived without due process.

Similarly, we do not accept the argument that non-probationary county employees seeking office have no standing to contest the application of Rule 10.2(F) since a "leave of absence shall be without prejudice to the employee's seniority ranking, classification, and pay rate." Blue Earth County Work Rule 10.3 expressly provides that an employee may be reinstated after an unpaid leave of absence "to a position in his former classification *or to a position of comparable duties and pay subject to the availability of [the] position.*" (emphasis supplied). Taking these rules together and applying them to the facts of this case, we think it is clear that at the time Ziegler was placed on an involuntary leave of absence, she had no guarantee that she would retain the same position she left if her candidacy proved unsuccessful.[2]

When examining what process is due in a given situation, the United States Supreme Court has employed a balancing test. Three interests are balanced: the importance of the private interest at stake, the government interest in administrative efficiency and the risk of erroneous deprivation under current procedures. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Appellants argue that the administrative burden of providing a pre-suspension "conflict" hearing is minimal compared to the interest at stake and the risk of erroneous deprivation under current procedures. We are similarly persuaded.

*Process Due*

The right to run for public office is an important right protected by the first amendment. *Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855, 31 L.Ed.2d 92 (1972); *Bolin v. State Department of Public Safety,* 313 N.W.2d 381, 382 (Minn. 1981). It is not, however, a fundamental right. *Id.* The right to run for public office may be subject to restrictions, "especially when government employees are the subject of the regulation." *Bolin,* 313 N.W.2d at 383 citing *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Likewise, "the significance of the private interest in retaining employment cannot be gainsaid." *Loudermill,* 470 U.S. at ——, 105 S.Ct. at 1494. When county employees have no option but to forgo regular compensation during the period of their candidacy, they assert their first amendment rights literally at their own expense. While this will not necessar-

---

1. Under the terms of the collective bargaining agreement, only probationary employees can be dismissed "at any time, *without cause,* at the discretion of the Employer." (emphasis supplied). Senior employees, like Ziegler, "shall lose [their] seniority standing when [they are] discharged *for cause.*" (emphasis supplied).

2. Although Ziegler was unsuccessful in her bid for county commissioner and subsequently reinstated to her former position, we are not foreclosed from considering the overall validity of Rule 10.2(F) as it relates to due process nor are we prevented from considering application of the Rule as it relates to Ziegler's claim for back wages. Ziegler still endures a three-month loss of wages from the period she was a candidate. The propriety of this deprivation as a result of

Rule 10.2(F) remains a live controversy. Even if a case is moot, however, it maybe reviewed if it raises issues "capable of repetition yet evading review." *In re Peterson,* 360 N.W.2d 333, 335 (Minn.1984) (quoting *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)); *L.K. v. Gregg,* 380 N.W.2d 145, 149 (Minn.Ct.App.1986); *In re Kinzer,* 375 N.W.2d 526, 530 (Minn.Ct.App.1985). Since Rule 10.-2(F) encompasses *all* non-probationary county employees running for elective county office, regardless of the office they seek, the adequacy of procedures employed as it relates to future candidates is plainly an issue "capable of repetition."

ily render the burden impermissible,[3] it nonetheless illustrates the need for procedural safeguards.

By its terms, Rule 10.2(F) *predetermines* that an actual conflict of interest exists between *all* non-probationary county employees' present positions and the elective county office sought. We cannot fathom how a rule, so broad in application, furthers respondent's interest in a "smooth and harmonious working relationship between elected officials and other employees within the department." Whether an actual conflict of interest exists is a factual determination which must be made in light of circumstances particular to that case. As presently structured, Rule 10.2(F) irrebutably *presumes* that *any* non-probationary county employee, regardless of the position held, has an inherent conflict of interest with *any* elective county office. This is a faulty assumption. Under Minn.Stat. § 43A.32 (1985), classified *state* employees running for elective office are not automatically presumed to create a conflict of interest. Such employees are required to take a leave of absence "if, in the opinion of the commissioner, the candidacy conflicts with [their] regular state employment." If a *finding* of conflict is necessary before action is taken with respect to state employees, we do not see how a conflict can be *presumed* under Rule 10.2(F) at the county level.

The dissent argues that an election contest between a county commissioner, as supervisor, and a county employee, as the supervised, is "disharmonious per se." With all due respect, this interpretation is strained at best. The county board is not a supervisor in the traditional sense. It has limited contact, if any, with the majority of county employees. The mere fact that it

functions as a policymaking body does not in and of itself create a disharmonious relationship with *all* county employees. In reaching its conclusion, the dissent ignores the circumstances prompting adoption of the Rule—that of a deputy sheriff challenging his direct superior for the office of county sheriff. The disharmony which resulted stemmed from the direct interrelationship between the two positions, not from a *per se* application of the employment relationship. Furthermore, in stating that an inherent conflict of interest is "obvious" in rural areas as opposed to metropolitan areas, the dissent takes on the role of factfinder and oversteps our standard of review. The principles of due process are not confined by demographic boundaries.

Respondent conceded during oral argument that it would suffer no hardship by providing a "conflict" hearing prior to taking final action. Indeed, "[i]n general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1495 (quoting *Mathews v. Eldridge*, 424 U.S. at 343, 96 S.Ct. at 907). "The formality and procedural requisites for a hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

The risk of erroneous deprivation under current standards further supports the need for a pre-action "conflict" hearing. Under Rule 10.2(F), county employees forfeit their right to receive regular compensation upon filing as a candidate. Presumably, to campaign effectively, an employee in this situation would forgo months of

---

**3.** Since we reverse on other grounds, we need not address appellants' first amendment and equal protection claims. We note, however, that in *Bolin*, an equal protection case with first amendment overtones, the court utilized a strict scrutiny analysis in striking down a "resign to run" rule that applied to a state patrolman seeking the office of sheriff. The court held that when a restriction on first amendment rights is involved, the least restrictive means available to achieve the governmental purpose served by the restriction must be adopted. In *Bolin*, although the state had a compelling interest in promoting harmony and cooperation between the state patrol and the sheriff's office, the "resign to run" rule was not the least restrictive means for furthering that interest when an unpaid leave of absence accomplished the same objective and was less burdensome on the patrolman's rights.

compensation. This, in fact, is what occurred in the present case. The trial court concluded, however, that Ziegler's loss of wages from the middle of July to the first part of November "is a comparatively small loss of wages." We disagree. To a county social worker, a loss of over three months in wages is a significant sum.

It is well established that the "root requirement" of the due process clause is "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. at 379, 91 S.Ct. at 786) (emphasis in original) (footnote omitted). Rule 10.2(F) does not respond to this "root requirement". As *Loudermill* expressly reiterated:

> The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.'

*Loudermill*, 470 U.S. at ——, 105 S.Ct. at 1493 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974).

■ The mere fact that Ziegler elected to follow grievance procedures outlined in the collective bargaining agreement does not automatically mean that she was afforded due process as the dissent suggests. An employer's grievance procedures are not immune from constitutional safeguards and must meet due process requirements under federal law. *See Eisen v. State, Department of Public Welfare*, 352 N.W.2d 731, 736 (Minn.1984).

■ We hold that Rule 10.2(F) is unconstitutional on its face as violative of procedural due process since it predetermines an actual conflict of interest between *all* non-probationary county employees seeking elective county office, regardless of the

position sought. The application of Rule 10.2(F) to Jeanette Ziegler resulted in a loss of over three months in wages, a deprivation she continues to endure. The loss of this significant property interest without due process entitles her to reimbursement of this sum with interest from the date she was placed on an unpaid leave of absence.

■ Because of our holding in this case, we need not address other arguments advanced by appellants.[4]

## DECISION

Blue Earth County Work Rule 10.2(F) is unconstitutional on its face as violative of procedural due process since it predetermines an actual conflict between all non-probationary county employees and the elective county positions they seek. Since application of the rule operated to deprive a senior county social worker of over three months in wages, she is entitled to reinstatement of those wages with interest from the time she was placed on mandatory leave of absence.

Reversed and remanded.

POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ., dissent.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent, concur in the dissent of Judge Nierengarten, and would affirm the trial court for the following reasons:

1. In addition to the reasoning of Judge Nierengarten, it is important to note that the state legislature enacted Minn.Stat. § 43A.32, subd. 2, which provides:

> **Leaves of absence for elected public officials, candidates.** Except as herein provided any officer or employee in the classified service shall:
>
> (a) Take leave of absence upon assuming an elected federal or state public office, including elected state legislative office;

---

4. Minn.Stat. § 210A.081 is a criminal statute and its provisions do not control the decision here.

(b) Take leave of absence upon assuming any elected public office other than enumerated in clause (a), if, in the opinion of the commissioner, the holding of the office conflicts with his regular state employment;

(c) Upon his request, be granted leave of absence upon becoming a candidate, or during the course of his candidacy, for any elected public office; and

(d) Take leave of absence upon becoming a candidate, or during the course of candidacy, for any elected public office if, in the opinion of the commissioner, the candidacy conflicts with his regular state employment.

All requests for opinions of the commissioner and all opinions from the commissioner under the provisions of clauses (b) and (d) shall be in writing and shall be delivered by certified mail.

The commissioner shall issue an opinion under the provisions of clauses (b) and (d) within seven calendar days of receipt of the request.

*Id.*

Since the legislature requires state employees to take a leave of absence upon becoming a candidate when the state's representative, the Commissioner of Employee Relations, determines the candidacy conflicts with regular state employment, it would be unreasonable to determine that the governing bodies of other political subdivisions, such as the county here, could not adopt similar work rules requiring a leave of absence during a governmental employee's candidacy.

2. Work rule 10.2(F) reasonably requires an employee to take a leave of absence. Invalidation of the county rule, as done by the majority, would create a different classification of all other public employees as compared to state employees, and poses more severe equal protection constitutional problems than are present here.

3. The majority's reliance on *Cleveland Board of Education v. Loudermill* is much too broad. *Cleveland* applies to permanent discharge and is being stretched much too far by the majority in their application to a temporary leave of absence.

4. Since the majority prevails, I can only recommend that this issue be addressed by the legislature to determine whether passage of legislation affecting all other governmental employees, in addition to state employees, is warranted or whether section 43A.32 is unduly restrictive of state employees. The possibility of conflicts on a local level is much more evident and apparent than might be that of a state employee becoming a candidate for public office. This apparent inequality of treatment between the various classes of public employees, state or otherwise, should be corrected.

WOZNIAK, Judge (dissenting).

I concur in the dissent of Chief Judge Popovich.

NIERENGARTEN, Judge, dissenting.

I respectfully dissent. As a result of an earlier conflict of interest problem that arose when a county employee ran for an elective county office, the county board of commissioners adopted rule 10.2(F) of the county personnel rules. Rule 10.2(F) was adopted, in part, to promote "a smooth and harmonious working relationship between elected officials and other employees within the department." No one can assert that is not a reasonable basis for the Rule. To suggest that an election contest between a county employee and a county commissioner, the supervised and the supervisor, is not disharmonious per se to their relationship is to whistle in the wind. The trial court was absolutely correct in finding that when a county employee runs for the office of county commissioner an inherent conflict of interest arises and that rule 10.2(F) is reasonable. This may not be as apparent in the metropolitan area where county commissioner and county employee are somewhat detached, but in a smaller rural municipality, such as Blue Earth County, the inherent conflict is so obvious that a trial court would be remiss in not finding as it did here.

Assuming that Ziegler possessed a property interest in continued employment, (and one might note, here it is only a temporary leave of absence) she could not be deprived of this property right without some degree of due process. *See Cleveland Board of Education v. Loudermill,* — U.S. —, —, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Ziegler was not denied due process, however. After her employer placed her on an unrequested leave of absence, Ziegler elected to follow the grievance procedures outlined in the collective bargaining agreement. She had her grievance reviewed by an arbitrator and then by the trial court. I would affirm the decision of the trial court.