PER CURIAM.
¶1 Praveen Kharb appeals a judgment convicting him of one count of first-degree sexual assault of a child under age thirteen and seven counts of possession of child pornography. He also appeals an order denying his motion for postconviction relief. Kharb argues he is entitled to withdraw his no contest pleas because a provision of his plea agreement concerning the waiver of his right to appeal was ambiguous; because the circuit court did not conduct an adequate colloquy regarding the appellate waiver provision; and because his trial attorneys were ineffective by failing to adequately explain the appellate waiver provision. In the alternative, Kharb argues either sentence modification or resentencing is warranted based on errors in the presentence investigation report (PSI). We reject Kharb's arguments and affirm.
BACKGROUND
¶2 In January 2014, thirty-seven-year-old Kharb began communicating online with Mary,[1] a twelve-year-old girl residing in Marathon County, Wisconsin. They communicated online for approximately two months, during which time Kharb sent Mary various gifts, including a sex toy. Kharb persuaded Mary to exchange nude pictures with him, including one in which she was using the sex toy. In March 2014, Kharb traveled to Mary's home from Washington State and had sexual intercourse with her.
¶3 Kharb was initially charged with one count of first-degree sexual assault of a child under age thirteen and one count of using a computer to facilitate a child sex crime. The State later filed an amended Information that included fourteen additional charges-seven counts of possession of child pornography, and seven counts of sexual exploitation of a child.
¶4 The parties ultimately reached a plea agreement, by which Kharb agreed to plead no contest to the first-degree sexual assault of a child charge and to the seven child pornography counts. Kharb also agreed to withdraw any pending motions, to recommend sentences providing for at least three years of initial confinement, and not to contest future deportation proceedings. In addition, the plea agreement included a provision regarding the waiver of Kharb's appellate rights. According to a document attached to the Plea Questionnaire/Waiver of Rights form that Kharb completed, Kharb agreed "to waive his right to appeal the conviction." When reciting the terms of the parties' agreement during the plea hearing, the prosecutor stated Kharb "will waive his right to appeal."
¶5 In exchange for Kharb's no contest pleas and the other concessions discussed above, the State agreed to recommend that the remaining eight charges against him be dismissed and read in for purposes of sentencing. The State also agreed to cap its sentencing recommendation for all eight convictions at seven years of initial confinement and twenty years of extended supervision. Furthermore, the State agreed not to file any additional charges related to Kharb's conduct with Mary, and it obtained an agreement from authorities in Washington State that Kharb would not face any charges there.
¶6 At the plea hearing, the circuit court conducted a colloquy, during which it confirmed that Kharb understood the terms of the plea agreement and understood that the court was not bound by that agreement. The court also confirmed that Kharb had reviewed the information on the Plea Questionnaire/Waiver of Rights form "carefully" with his attorneys, had discussed his questions regarding the form with them, and had signed the form because he understood the information it contained. Kharb further confirmed that he had enough time to discuss the plea agreement with his attorneys and was satisfied with their representation. Attorney Joshua Martin-one of the lawyers representing Kharb[2] -similarly told the court that he had sufficient time to discuss the plea agreement with Kharb and believed Kharb's pleas were free, voluntary, and intelligent.
¶7 The circuit court accepted Kharb's pleas and found him guilty. The court did not specifically discuss the appellate waiver provision during its plea colloquy with Kharb. However, after accepting Kharb's pleas, the court addressed the attorneys for both sides, stating, "You did put the other aspects of your agreement on the record. They did include the representation that he would be waiving appeal ..., so the Court does note that's part of the record." Kharb did not raise any questions or concerns regarding the appellate waiver provision during the plea hearing.
¶8 After considering PSIs submitted by both parties, the circuit court ultimately imposed sentences totaling fifteen years' initial confinement and fifteen years' extended supervision-far less than Kharb's maximum prison exposure of 235 years. Kharb then moved for postconviction relief, seeking plea withdrawal, resentencing, or sentence modification.
¶9 Kharb argued he was entitled to withdraw his pleas on three grounds: (1) that the plea agreement's appellate waiver provision was ambiguous; (2) that the circuit court's plea colloquy was deficient because the court was required-and failed-to conduct a colloquy ensuring that Kharb's waiver of his appellate rights was free, voluntary, and intelligent (hereinafter, the "Bangert claim")[3] ; and (3) that Kharb's trial attorneys were ineffective by failing to adequately explain the appellate waiver provision to him (hereinafter, the "Nelson/Bentley claim").[4] In support of his claim for resentencing, Kharb argued his sentences were based on inaccurate information in the State's PSI. Kharb further asserted that the existence of that inaccurate information was a new factor warranting sentence modification, and that his sentences were unduly harsh.
¶10 With respect to Kharb's Bangert claim, the circuit court concluded he had made a prima facie showing that the plea colloquy was defective because "there may have not been an adequate record made as to [Kharb's] knowing waiver of the separate and distinct right to appeal." The court therefore held that the burden had shifted to the State to establish that Kharb's plea was "knowingly, voluntarily, and intelligently entered despite the inadequacy of the record at the time of the plea's acceptance." The court then held an evidentiary hearing on Kharb's Bangert and Nelson/Bentley claims, at which Martin, Zich, Bhatt, and Kharb each testified.
¶11 The circuit court subsequently denied Kharb's postconviction motion in its entirety. Addressing Kharb's plea withdrawal claims, the court found that: (1) the State's initial plea offer to Kharb did not include an appellate waiver provision; (2) it was Martin who initially proposed adding an appellate waiver provision; (3) Martin discussed the meaning and purpose of the appellate waiver provision with Kharb before Kharb entered his no contest pleas; (4) Kharb gave Martin "specific authorization" to propose an appellate waiver provision in his plea negotiations with the State; (5) Martin reviewed "every line" of the Plea Questionnaire/Waiver of Rights form with Kharb before Kharb signed it; (6) Martin explained to Kharb that the appellate waiver provision barred him from appealing his no contest pleas, as opposed to his sentences; (7) Kharb never expressed any confusion about the appellate waiver provision; (8) Kharb told the court during the plea hearing that he had reviewed the Plea Questionnaire/Waiver of Rights form with his attorneys and that he understood the plea agreement's terms; (9) Kharb's statements during the plea hearing regarding his understanding of the plea agreement were more credible than his subsequent, contrary testimony at the postconviction hearing; and (10) Martin's postconviction hearing testimony that he "discussed in detail all aspects of the plea agreement with [Kharb], including the waiver of his right to appeal," was credible.
¶12 Based on these findings, the circuit court concluded the plea agreement was not ambiguous and Kharb understood when he entered his pleas that the appellate waiver provision only limited his right to appeal his conviction and did not prevent him from challenging the sentences imposed. The court further concluded Kharb's Bangert claim failed because-despite any deficiencies in the plea colloquy-the State had met its burden to prove that Kharb's pleas were knowing, intelligent, and voluntary. The court also rejected Kharb's Nelson/Bentley claim, concluding Kharb had failed to establish ineffective assistance because he had not proved that his attorneys performed deficiently in explaining the appellate waiver provision.
¶13 Turning to Kharb's sentencing challenges, the circuit court rejected Kharb's resentencing claim, concluding he had failed to show that any inaccurate information was before the court at sentencing or that the court relied on any of the allegedly inaccurate information. The court also concluded Kharb was not entitled to sentence modification based on the alleged errors in the PSI or because his sentences were unduly harsh.
¶14 Kharb subsequently moved for reconsideration of the circuit court's decision denying plea withdrawal. The court denied that motion, and Kharb now appeals.
DISCUSSION
I. Ambiguous plea agreement
¶15 To withdraw his or her plea after sentencing, a defendant must establish, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice. State v. Villegas , 2018 WI App 9, ¶18, 380 Wis. 2d 246, 908 N.W.2d 198, review denied , 2018 WI 100, 384 Wis. 2d 768, 920 N.W.2d 920. On appeal, Kharb first argues this standard has been met because the plea agreement's appellate waiver provision is ambiguous. Although his ambiguity argument is somewhat unclear, he appears to contend the appellate waiver provision is ambiguous as to whether it completely prevents him from filing any appeal, or simply bars him from challenging his convictions. In response, the State asserts the appellate waiver provision unambiguously bars only appellate challenges to Kharb's convictions, and Kharb remains free to challenge both his sentences and "the knowing, voluntary, and intelligent nature of his no contest pleas."
¶16 Ultimately, we need not resolve the parties' dispute regarding whether the appellate waiver provision in Kharb's plea agreement is ambiguous. Assuming without deciding that the provision is ambiguous, we conclude any error in that regard is harmless because it has not affected Kharb's substantial rights. See WIS. STAT. § 805.18(1) ; State v. Harvey , 2002 WI 93, ¶39, 254 Wis. 2d 442, 647 N.W.2d 189. The State is not attempting to enforce a full waiver of Kharb's appellate rights. He has been permitted to file a postconviction motion and appeal challenging both his no contest pleas and his sentences. Kharb does not argue that the appellate waiver provision has prevented him from raising any other issues that he would have otherwise attempted to assert on appeal. Under these circumstances, even assuming the plea agreement is ambiguous regarding the scope of the appellate waiver provision, there is no evidence the ambiguity has harmed Kharb in any way. We will not reverse based on a harmless error. Sec. 805.18(1).[5]
II. Bangert claim
¶17 Kharb next argues he is entitled to withdraw his no contest pleas because the circuit court's plea colloquy was defective. When a defendant moves for plea withdrawal based on a defective plea colloquy, he or she has the initial burden to make a prima facie showing that the colloquy did not comply with the requirements set forth in WIS. STAT. § 971.08 or other mandatory procedures. State v. Bangert , 131 Wis. 2d 246, 274, 389 N.W.2d 246 (1986). If the defendant makes that showing and further alleges that he or she did not know or understand the information that should have been provided, the burden shifts to the State to show, by clear and convincing evidence, "that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Id.
¶18 Kharb contends his plea colloquy was defective because the circuit court was required-and failed-to conduct a colloquy ensuring that Kharb's waiver of his appellate rights was knowing, intelligent, and voluntary. In response, the State asserts Kharb has failed to make a prima facie showing that he is entitled to relief on this ground because he has not cited any Wisconsin authority holding that a circuit court must "conduct a specific dialogue with the defendant concerning the individual terms of the [plea] agreement, including any appeal waiver provisions."
¶19 We conclude that, regardless of whether Kharb made a prima facie showing that the plea colloquy was defective, the State ultimately met its burden to establish that Kharb's pleas were knowingly, intelligently, and voluntarily entered. In making this determination, we accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous. State v. Hoppe , 2009 WI 41, ¶45, 317 Wis. 2d 161, 765 N.W.2d 794. However, whether Kharb's pleas were knowing, intelligent, and voluntary is a question of law that we review independently. See id.
¶20 Here, the circuit court's factual findings amply support a conclusion that Kharb's pleas were knowing, intelligent, and voluntary. The court relied on the fact that Kharb had signed the Plea Questionnaire/Waiver of Rights form, which clearly stated that, by entering into the plea agreement, Kharb agreed "to waive his right to appeal the conviction." Kharb did not raise any questions or concerns regarding the appellate waiver provision during the plea hearing. Moreover, he expressly told the court during that hearing that he had reviewed the Plea Questionnaire/Waiver of Rights form with Martin and understood the plea agreement's terms. The court reasonably determined that Kharb's statements to that effect were more credible than his subsequent testimony at the postconviction hearing that his attorneys did not review the Plea Questionnaire/Waiver of Rights form with him and that he did not understand the appellate waiver provision. See Hutchings v. United States , 618 F.3d 693, 699 (7th Cir. 2010) (stating a defendant "is normally bound by the representations he makes to a court during the [plea] colloquy").
¶21 Furthermore, the circuit court expressly found that Martin discussed the meaning and purpose of the appellate waiver provision with Kharb before Kharb entered his no contest pleas; that Martin reviewed the Plea Questionnaire/Waiver of Rights form with Kharb before Kharb signed it; and that Martin explained to Kharb that the appellate waiver provision barred him from challenging his no contest pleas, as opposed to his sentences. Martin's postconviction hearing testimony supports these findings. The court expressly found Martin credible and found Kharb's contrary testimony that Martin did not explain the appellate waiver provision self-serving and incredible. "When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." State v. Peppertree Resort Villas, Inc. , 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.
¶22 Kharb contends the circuit court's finding that Martin explained the appellate waiver provision prior to the plea hearing is clearly erroneous. We disagree. A factual finding is clearly erroneous if it is against the great weight and clear preponderance of the evidence. State v. Arias , 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748. In challenging the court's finding that Martin explained the appellate waiver provision before the plea hearing, Kharb merely cites evidence that could have supported a contrary finding that no such explanation occurred. However, "[w]hen evidence supports the drawing of either of two conflicting but reasonable inferences, the [circuit] court, and not this court, must decide which inference to draw." Plesko v. Figgie Int'l , 190 Wis. 2d 764, 776, 528 N.W.2d 446 (Ct. App. 1994). We do not search the record for evidence opposing the circuit court's decision, but for evidence supporting it. See Mentzel v. City of Oshkosh , 146 Wis. 2d 804, 808, 432 N.W.2d 609 (Ct. App. 1988). Here, Martin's testimony-which the circuit court expressly found credible-is sufficient to support the court's finding that Martin explained the appellate waiver provision to Kharb prior to the plea hearing.
¶23 Kharb also challenges the circuit court's finding that Martin reviewed "every line" of the Plea Questionnaire/Waiver of Rights form with him before the plea hearing. Kharb argues the evidence shows Martin could not possibly have conducted a line-by-line review of that form during their ten-minute meeting on the morning of the plea hearing. However, the evidence Kharb cites does not prove that such a discussion was an impossibility, given the plea agreement's brevity. Moreover, Kharb does not account for the fact that he and Martin had multiple discussions about the plea agreement before the day of the plea hearing, which would have lessened the need for lengthy explanations of the agreement's terms during their meeting immediately prior to the hearing. Kharb has therefore failed to establish that the court's finding regarding Martin's review of the Plea Questionnaire/Waiver of Rights form is clearly erroneous.
¶24 Based on the circuit court's factual findings, we conclude Kharb was aware of-and understood-the appellate waiver provision at the time he entered his no contest pleas. As such, we conclude, as a matter of law, that Kharb's pleas were knowing, intelligent, and voluntary, despite the circuit court's failure to conduct a colloquy regarding the appellate waiver provision. We therefore reject Kharb's Bangert claim.
III. Nelson/Bentley claim
¶25 In his Nelson/Bentley claim, Kharb alleged he should be permitted to withdraw his pleas because his trial attorneys were ineffective by failing to adequately explain the appellate waiver provision. Ineffective assistance is one type of manifest injustice that would permit a defendant to withdraw his or her plea. State v. Shata , 2015 WI 74, ¶29, 364 Wis. 2d 63, 868 N.W.2d 93.
¶26 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington , 466 U.S. 668, 687 (1984). When reviewing an ineffective assistance claim, we will uphold the circuit court's findings of fact unless they are clearly erroneous, but whether the facts are sufficient to establish ineffective assistance is a question of law that we review independently. State v. Nielsen , 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. If a defendant fails to make a sufficient showing on one prong of the Strickland test, we need not address the other. Strickland , 466 U.S. at 697.
¶27 Kharb's ineffective assistance claim fails because he has not established that he was prejudiced by any deficiency in his trial attorneys' explanations of the appellate waiver provision. To prove prejudice in this context, Kharb must show there is a reasonable probability that, but for his attorneys' alleged errors, "he would not have pleaded guilty and would have insisted on going to trial." See Hill v. Lockhart , 474 U.S. 52, 59 (1985). "A mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." United States v. Arvanitis , 902 F.2d 489, 494 (7th Cir. 1990).
¶28 Here, Kharb's postconviction motion did not even contain a "mere allegation" that, absent his attorneys' alleged errors, he would have insisted on going to trial. Instead, Kharb's motion alleged: "[H]ad Mr. Kharb known his waiver of appellate rights could be interpreted to include a waiver of the right to challenge the plea and the sentence, he would not have accepted the plea." Accepting this allegation as true, it does not mean that Kharb would have insisted on a trial. Instead, it could easily mean that, had Kharb's attorneys provided additional explanation regarding the appellate waiver provision, Kharb would have refused to accept an agreement containing that provision and plea negotiations would have continued without it.
¶29 In addition, other circumstances support a conclusion that, even absent his trial attorneys' alleged errors, Kharb would not have insisted on going to trial. First, Martin expressly informed the circuit court during the sentencing hearing that "[f]rom the beginning, ... it was never [Kharb's] intention to go to trial." Second, Kharb secured a very favorable plea agreement from the State. In exchange for his no contest pleas, the State agreed to recommend dismissal of eight of the sixteen charges against him, thus significantly reducing his sentencing exposure. The State also agreed to cap its sentencing recommendation at only seven years of initial confinement and twenty years of extended supervision-far less than Kharb's maximum prison exposure of 235 years. The State further promised not to file any additional charges involving Kharb's conduct with Mary, and it also obtained an agreement from authorities in Washington State that Kharb would not face any charges there. We agree with the State that it is highly unlikely Kharb would have rejected these terms and insisted on going to trial had he been given additional advice regarding the appellate waiver provision. Instead, Kharb "obviously saw significant benefits" to accepting the State's offer and pleading no contest. See Villegas , 380 Wis. 2d 246, ¶39.
¶30 Kharb's attorneys' testimony at the postconviction hearing further supports a conclusion that Kharb would not have insisted on going to trial. When asked about Kharb's decision to accept the State's plea offer, Martin stated, "[Kharb] indicated to [his attorneys] that he wished to accept an offer where the State was going to argue for no more than seven years and the defense would argue for no less than three." Bhatt similarly testified, "[B]ecause the sentence parameter of three to seven years was agreed, because the deportation was agreed, and because ... the State dropping the State of Washington charges was agreed, that's the reason why [Kharb] decided to go forward." This testimony strongly suggests that the presence or absence of the appellate waiver provision was not a material factor in Kharb's decision to accept the State's plea offer.
¶31 In his reply brief, Kharb argues for the first time that the appellate waiver provision "was only to apply if a joint sentence recommendation was obtained," which did not occur. We need not address arguments raised for the first time in a reply brief. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Moreover, the record shows that, regardless of what the parties may have initially discussed during their plea negotiations, they ultimately reached an agreement under which the State would recommend not more than seven years of initial confinement and the defense would recommend not less than three years. The terms of that agreement-including the appellate waiver provision-were stated on the Plea Questionnaire/Waiver of Rights form that Kharb completed. Kharb does not argue that he agreed to accept the appellate waiver provision because he was under the mistaken belief that the parties had reached a joint sentence recommendation.
¶32 Kharb also asserts in his reply brief that he was "concerned about the length of his sentence," and "[i]f the State wanted a blanket appellate waiver ... in exchange for a 7-year sentence recommendation, then Mr. Kharb's only viable option would have been to try the case." However, as explained above, the State has not attempted to enforce a blanket appellate waiver. Notably, it has not argued the appellate waiver provision bars Kharb's current appeal, in which he has challenged both his no contest pleas and his sentences.
¶33 In summary, the record does not support a conclusion that, absent his trial attorneys' alleged errors, Kharb would have rejected the State's plea offer and insisted on going to trial. Thus, Kharb has failed to establish that he was prejudiced by his attorneys' allegedly deficient performance. As such, Kharb has not shown that he received ineffective assistance of counsel, and his Nelson/Bentley claim for plea withdrawal therefore fails.
IV. Resentencing
¶34 In the alternative, Kharb argues he is entitled to resentencing because the circuit court sentenced him based on inaccurate information. "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." State v. Tiepelman , 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied this right is a question of law that we review independently. Id. To obtain resentencing on this basis, a defendant must show both that inaccurate information was before the sentencing court and that the court actually relied on that information when imposing sentence. Id. , ¶26. If the defendant makes this showing, the burden shifts to the State to prove the error was harmless. Id.
¶35 Kharb argues three pieces of inaccurate information were before the circuit court at sentencing. First, he asserts the State's PSI incorrectly stated that he first contacted the victim in November 2013, rather than January 2014. Be that as it may, the court acknowledged that error during its sentencing remarks and stated, "That was corrected today. January of 2014 is what the Court understands." Thus, the court was clearly aware of the correct date of initial contact when sentencing Kharb.
¶36 Second, Kharb contends the State's PSI incorrectly indicated that Mary was home alone on the day of the assault. Third, he notes the PSI stated Mary's mother "expressed fear that [Mary] is not ... Kharb's only victim as there were pictures of other minor children found during the search on his computer." Kharb asserts that, "[t]o the best of [his] knowledge, the only photos on his computer (other than possible deleted photos of [Mary] ) were of his children."
¶37 Regardless of whether this information was inaccurate, Kharb has failed to show that the circuit court actually relied on it when imposing sentence. To establish actual reliance, a defendant must show that the sentencing court gave "explicit attention" or "specific consideration" to the challenged information, such that the information "formed part of the basis for the sentence." Id. , ¶14 (citation omitted). The court did not make any reference during its sentencing remarks to whether Mary was home alone on the day of the assault or to the possibility that Kharb had additional victims. Under these circumstances, Kharb's claim that the court actually relied on the allegedly inaccurate information is meritless.
¶38 In support of his argument to the contrary, Kharb notes that the circuit court referred to the State's PSI multiple times during its sentencing remarks. However, none of those references pertained to the allegedly inaccurate information underlying Kharb's resentencing argument. The fact that the court relied on other information in the PSI when imposing sentence does not compel a conclusion that it also relied on the alleged inaccuracies Kharb now raises. Because Kharb has failed to establish actual reliance on any inaccurate information in the State's PSI, he is not entitled to resentencing.
V. Sentence modification
¶39 Kharb also contends that the alleged inaccuracies in the State's PSI constitute a new factor warranting sentence modification. Whether a set of facts constitutes a new factor for purposes of sentence modification is a question of law. State v. Harbor , 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828. A set of facts qualifies as a new factor when it is highly relevant to the imposition of sentence but was not known to the court at the time of sentencing, either because it was not then in existence or because it was unknowingly overlooked by all the parties. Id. , ¶40.
¶40 Kharb's sentence modification argument fails for the same reasons as his resentencing argument. Again, the circuit court was aware at the time of sentencing that Kharb began communicating with Mary in January 2014, rather than November 2013. The remaining alleged inaccuracies-whether Mary was home alone when the assault occurred and Mary's mother's belief that Kharb had other victims-were not highly relevant to the sentences imposed. See id. As noted above, the court did not rely on-or even refer to-that information during its sentencing remarks. Instead, the court focused on the age disparity between Kharb and Mary; Kharb's extensive grooming behavior; the significant impact of Kharb's crimes on Mary and her family; Kharb's need for sex offender treatment in a confined setting; Kharb's minimization and justification of his own conduct; and the need to protect the public. These factors amply justified the court's aggregate sentences of fifteen years' initial confinement and fifteen years' extended supervision.
¶41 Kharb also briefly asserts that he is entitled to relief because his sentences are unduly harsh and excessive. However, Kharb does not develop any argument explaining why his sentences-which are well within the applicable statutory limits-are "so excessive and unusual and so disproportionate to the offense[s] committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." See State v. Grindemann , 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted). We need not address undeveloped arguments. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Pursuant to the policy underlying Wis. Stat. Rule 809.86 (2017-18), we refer to the victim using a pseudonym. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Kharb was represented by three attorneys in the circuit court. Attorney John Zich was a local attorney appointed by the State Public Defender's Office. Attorney Martin and attorney Sanjay Bhatt were criminal defense lawyers from New York who had been retained by Kharb's family. On appeal, it is undisputed that Martin was lead counsel for the defense and handled the plea negotiations.

See State v. Bangert , 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

See Nelson v. State , 54 Wis. 2d 489, 195 N.W.2d 629 (1972) ; State v. Bentley , 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

Kharb does not contend that the harmless error rule is inapplicable to his claim regarding ambiguity in the plea agreement. Instead, he argues in his reply brief that the error is not harmless because the appellate waiver provision, if interpreted broadly, "would prohibit any sort of an appeal." However, as noted above, Kharb has been permitted to file a postconviction motion and appeal challenging both his no contest pleas and his sentences. The fact that the appellate waiver provision has not been interpreted broadly is precisely what makes the provision's alleged ambiguity harmless.