Phyllis BALL, Katherine Pieper, Gilbert Davis, Patricia Davis, Frederick L. Schwass, and Walter Bergman, Plaintiffs,

v.

The SCHOOL DISTRICT OF the CITY OF GRAND RAPIDS, a Municipal Corporation; Phillip Runkel, Superintendent of Public Instruction of the State of Michigan; State Board of Education of the State of Michigan; Loren E. Monroe, State Treasurer of the State of Michigan, Defendants,

and

Irma Garcia-Aguilar and Simon Aguilar, Bruce and Linda Bylsma, Robert and Penelope Comer, Clarence and Rosalee Covert, Scipuo and Janice Flowers, John and Shirley Leestma, Intervening Defendants.

No. G80–517.

United States District Court, W.D. Michigan, S.D.

Aug. 7, 1986.

Albert R. Dilley, Grand Rapids, Mich., for plaintiffs.

William S. Farr and John R. Oostema, Farr & Oosterhouse, Grand Rapids, Mich., Frank J. Kelley, Mich. Atty. Gen., by Gerald F. Young, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION

ENSLEN, District Judge.

This case comes once again before this court on plaintiffs' motion for costs and attorney's fees pursuant to 42 U.S.C. § 1988. Pursuant to a stipulation and order of October 31, 1985, the issue of plaintiffs' "entitlement" to attorney's fees was bifurcated from the issue of the "amount" of those fees. The entitlement aspect has been fully briefed by the parties. On July 31, 1986, oral argument was entertained on this issue. After much deliberation, and for the reasons set forth in this memorandum opinion, the court concludes that plaintiffs are not entitled to an award of attorney's fees under § 1988 or any other authority.

This action was originally filed in 1980 by taxpayers challenging the constitutionality, under the establishment clause of the first amendment as incorporated in the fourteenth amendment, of the "shared time" programs adopted by the defendant school district. Through these programs, the public school system financed and conducted supplementary classes in various nonpublic, primarily sectarian, schools. Plaintiffs' complaint sought declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Federal jurisdiction was premised upon 28 U.S.C. §§ 1331 and 1343(3).

After a bench trial, this court awarded plaintiffs their requested relief, declaring

the shared time programs violative of the establishment clause and enjoining their further operation. *Americans United for Separation of Church and State v. School District*, 546 F.Supp. 1071 (W.D.Mich. 1982). That decision was affirmed by a divided panel of the court of appeals. 718 F.2d 1389 (6th Cir.1983). On certiorari, the United States Supreme Court also affirmed. *Grand Rapids School District v. Ball*, — U.S. —, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985).

Following the original bench opinion in their favor, plaintiffs filed a motion for an award of reasonable attorney's fees. At that time, they claimed entitlement under three separate theories: (1) section 718 of the Emergency School Aid Act, 20 U.S.C. § 3205; (2) the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988; and (3) the common law "common fund principle." Defendants filed a response to this motion claiming alternatively that the court should defer ruling on the petition until the appellate process was completed or that the motion should be denied. With respect to the latter request, defendants noted that plaintiffs' reliance on 20 U.S.C. § 3205 was misplaced because that statute, by its own terms, applied only to "discrimination on the basis of race, color or national origin in violation of ... the fourteenth amendment...." Further, defendants noted that the Emergency School Aid Act had been repealed effective October 1, 1982. Pub.L. No. 97–35, Title V, § 587(a)(1), 95 Stat. 480 (1981). As to plaintiffs' § 1988 claim, defendants argued that it also is inapplicable by its own terms. That section states in pertinent part:

> *In any action or proceeding to enforce a provision of sections* 1981, 1982, *1983,* 1985, and 1986 of this title [title 42], title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. [Emphasis added.]

Defendants contended that since plaintiffs' complaint requested remedies under 28 U.S.C. §§ 2201 and 2202, and not 42 U.S.C.

§ 1983, the limited grant of statutory authority found in § 1988 was unavailing. Finally, defendants argued that an award of attorney's fees under the common fund principle was inappropriate in light of the Supreme Court's Opinion in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 264 n. 39, 95 S.Ct. 1612, 1625 n. 39, 44 L.Ed.2d 141 (1975) (common fund doctrine applicable when classes of beneficiaries are small in number and easily identifiable, not when benefits accrue to general public).

Rather than rule on the merits of plaintiffs' motion in 1982, this court opted to defer ruling until the appellate process had run its course. Currently, plaintiffs rely exclusively on the provisions of § 1988. Plaintiffs appear to concede, rightly so in the court's opinion, that the other two authorities are unavailing in this instance.

The issue of plaintiffs' entitlement to attorney's fees under § 1988 is not really that complicated. The only question is whether this action was brought "to enforce a provision of" § 1983. The most obvious place to look for an answer to that question is plaintiffs' complaint. The jurisdictional section of the complaint, ¶ 2, states that jurisdiction is premised on §§ 1331 and 1343(3) and then goes on to cite the remedial provisions of the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. While there is no requirement of federal pleading that a plaintiff cite the statute under which he or she claims relief, *see* Fed.R.Civ.P. 8(a) and (e), in this particular case, the plaintiffs *did* cite the statutory bases for their requested relief. Similarly, although defendants do not allege that plaintiffs could not have proceeded under § 1983 and obtained the same declaratory and injunctive relief, the fact remains that they did not do so, for whatever reason.

Plaintiffs now claim that ¶ 25 of the complaint, contained in Section V which is entitled "Causes of Action," states a claim for relief under § 1983. That paragraph reads:

The acts and threatened acts of Defendants, under color of law, deprive the individual Plaintiffs and the members of the organizational Plaintiff of rights, privileges and immunities guaranteed them by the Constitution of the United States, and more particularly, rights guaranteed them under the First and Fourteenth Amendments to the Constitution of the United States, in that Plaintiffs are being required to pay taxes for the support of religion and religious schools, to aid with public funds religion and the establishment of religion, and to give financial aid to the teaching and dissemination of religious doctrines and beliefs.

Plaintiffs argue that this cause of action is clearly a § 1983 claim because it tracks the language of § 1983. Though there is some merit to this reasoning, it is equally true that this type of allegation was necessary for the complaint to establish the required state action to make the proscriptions of the fourteenth amendment applicable, and thus, to state a claim for equitable relief upon which relief could be granted. It is, after all, only through the fourteenth amendment that the establishment clause of the first amendment constrains the actions of the states and their political subdivisions.

More telling than the face of the complaint, however, was the conduct of the parties, and especially the plaintiffs, throughout the course of this litigation. During trial, this case was presented as a straightforward establishment clause action under the Declaratory Judgment Act. I recall no discussion of § 1983 law whatsoever. The final opinion of this court made no mention of § 1983 and awarded no relief thereunder. Likewise, the opinions of the Sixth Circuit and the Supreme Court nowhere mention § 1983 or any other provision of the Civil Rights Act.

While the plaintiffs had ample opportunity to amend their complaint pursuant to Fed.R.Civ.P. 15(a) prior to trial to expressly include a § 1983 claim, they did not do so. They now seek leave of this court to amend pursuant to Rule 15(b). Such an amendment is proper, even after judgment, to conform to the evidence presented and when issues not raised in the pleadings are tried by express or implied consent of the parties. In this respect, I make the following two findings. First, there was no evidence presented at trial that was relevant to a § 1983 claim that was not also relevant to plaintiffs' claims under §§ 2201 and 2202. Secondly, I find that plaintiffs' alleged § 1983 claim was not tried by the express or implied consent of the defendants. This finding is supported by the fact that nothing occurred at trial to suggest that plaintiffs' cause of action was anything more than it purported to be—one for declaratory and injunctive relief under the Declaratory Judgment Act. In addition, this court notes that a more appropriate time for a Rule 15(b) motion would have been immediately after judgment, when the issue of whether plaintiffs had, in fact, claimed a § 1983 violation was first raised. At this point in the litigation, nearly four years after the entry of judgment, the court is constrained to conclude that plaintiffs have impliedly waived any right to a Rule 15(b) amendment to alter the statutory authority for the relief requested and received.

One final observation is appropriate. If this court were writing on a clean slate, it would certainly consider awarding plaintiffs' attorneys the full, reasonable value of their services enhanced by a multiplier to reflect the contingency of their success. These attorneys represented a group of concerned individuals in a *pro bono* case that was most unpopular with the vast majority of people in their community. The constitutional principle that they sought to vindicate, the separation of church and state, was of central concern to those who founded our nation. Though that principle may periodically fall into disfavor with a particular majority, the Constitution is plainly an anti-majoritarian document designed to withstand the natural ebb and flow of social opinion.

In addition to encountering public consternation, plaintiffs' attorneys overcame

the formidable legal opposition of skilled private attorneys, the Michigan Attorney General's Office and the Office of the Solicitor General of the United States. Their success on a sensitive issue in closely divided appellate opinions bespeaks the skill and tenacity of true champions. In a more perfect world, such noble efforts would not go unrewarded.

Alas, the slate on which this court writes is far from clean. It is the "American rule" that a prevailing litigant may not ordinarily recover his or her attorney's fees from the loser. Moreover, the Supreme Court has held that absent specific statutory authority, a federal court may not exercise its equitable powers to award attorney's fees in exception to the American rule on the theory that a litigant was performing the services of a "private attorney general." *Alyeska Pipeline*, 421 U.S. at 247, 95 S.Ct. at 1616.

The statutory authority relied on here is limited. In the opinion of this court, § 1988 only authorizes an award of attorney's fees to litigants who are successful on claims brought under § 1983 *et seq.*, not to those who *could have been* successful under § 1983 had they pursued such a claim. Accordingly, plaintiffs' motion for an award of attorney's fees under 42 U.S.C. § 1988 is denied. An appropriate judgment order will be entered forthwith.