L.K., et al., Respondents,

v.

**William GREGG, in his capacity as Commissioner of Veterans Affairs, et al., Appellants.**

No. CX–87–949.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Review Granted Dec. 23, 1987.

M. Francesca Chervenak, Kathleen Davis, Minneapolis, for respondents.

Hubert H. Humphrey, III, Atty. Gen., Merwin Peterson, Spec. Asst. Atty. Gen., St. Paul, for appellants.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Appellants are William Gregg, Commissioner of Veterans Affairs, and the administrator of the Minnesota Veterans Home (Home). Respondents are veterans who reside or have resided at the Home. They filed this action in August 1984, challenging the discharge policies and practices of the Home. The trial court denied the residents class certification and denied a temporary injunction, but granted a temporary restraining order preventing the Home from discharging them. The residents moved the trial court for a partial summary judgment. The trial court denied that motion, granted summary judgment to the Home, and dismissed all of the residents' claims.

The residents appealed that decision, and in January 1986 this court reversed the trial court's denial of summary judgment and its dismissal of the residents' other claims. *L.K. v. Gregg,* 380 N.W.2d 145 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Mar. 14, 1986) (*Gregg* I).

The residents then moved the trial court for an entry of judgment in their favor and for an award of attorney's fees under 42 U.S.C. § 1988. The trial court issued an order granting those motions and attorney's fees were awarded in the amount of $28,925.65. The Commissioner appeals the award of attorney's fees. We reverse.

## FACTS

In August 1984 the Commissioner determined that a shortage of space and increasing demand for nursing home care would require the conversion of one building in the Home from domiciliary to nursing care. This decision required transfer to the Hastings facility or discharge of some of its residents.

On August 10, 1984, the Home administrator sent some of those residents letters indicating that they would be discharged/transferred September 12, 1984. The Home had created a staff committee of Home employees, who then determined the best candidates to be transferred/discharged. The staff looked for residents who had substantially achieved their goals and were ready to move to independent living, had no present medical problems, were not using Home facilities such as Alchoholics Anonymous (AA), and were simply using the Home as a convenient residence. Also included were those with incomes who refused to pay maintenance charges.

The first letter sent to the identified residents gave 30 days' notice and offered assistance in making alternative living arrangements. A representative of the Minnesota Department of Health informed the Home administrator that the letter did not conform with the Patient's Bill of Rights, Minn. Stat. § 144.651, subd. 29 (1984). A new letter was issued that also

informed them they could receive a hearing before a committee if desired.

Four of those residents then filed suit in district court, challenging the Home's transfer/discharge attempts. On September 28, 1984, they brought a motion seeking a temporary restraining order and a temporary injunction to prevent their discharges/transfers from the Home and also sought class-action certification to represent all Home residents. The residents alleged they could not be discharged/transferred from the Home without the due process guaranteed them by the fourteenth amendment of the U.S. Constitution and that the Home could not discharge them without complying with the rulemaking procedures in Minn.Stat. ch. 14 (1984). The Home agreed to hold the transfer/discharges in abeyance until the request for a temporary injunction could be heard. On October 2, 1984, a second trial court denied class certification and ruled against a temporary injunction, but granted the temporary restraining order to allow the residents time to have hearings before an independent review panel.

The Home did not resist the motion for the temporary order. By this time, all of the original four plaintiffs had left the Home or had plans to leave. Subsequently, however, plaintiffs who had not yet left the Home brought a motion to amend the complaint and to add new plaintiffs. On November 12, 1984, a third trial court issued an order allowing the complaint to be amended and adding new plaintiffs.

The Home had notified all the original plaintiffs that they could receive a hearing before the independent review panel. None of the original four asked for a hearing and none of those four are at the Home any longer. All of the plaintiffs added by the court's order requested and received a hearing on their discharges/transfers in October 1984, except one who left the Home. None of those plaintiffs appealed from the decisions in the hearings.

In April 1985 a fourth trial court entered judgment for the Home based on the residents' failure to appeal from the hearings. The residents appealed to this court on the issue of jurisdiction and sought to have the Home rules declared invalid by means of a declaratory judgment. In oral argument before this court the Home admitted that rules were needed and said it was the Commissioner's intent to promulgate them. This court refused to issue a declaratory judgment and deemed that issue premature, noting:

> [B]oth parties agree that the Commissioner has failed to promulgate rules relative to the discharge or transfer of home residents. We cannot review what does not exist.

*Gregg* I, 380 N.W.2d at 149.

This court addressed the issue of the Commissioner's duty simply "to avoid a multiplicity of suits and endless litigation," *id.* at 149, and determined that the residents were entitled to a contested-case hearing under the Administrative Procedure Act (APA). *See id.* at 150–51. It also held that the trial court correctly denied class-action certification and that the Court of Appeals did not have jurisdiction to consider the validity of the Home rules; rather, the district court had original jurisdiction. *Id.* at 152.

On remand the district court enjoined the appellants from transfer or discharge of residents (1) until the rules were promulgated under the APA, or (2) without contested-case hearings. It also awarded attorney's fees for work performed by counsel, Legal Aid Society of Minneapolis, in the amount of $28,925.65, pursuant to 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Award Act. The Commissioner appeals that award.

### ISSUES

1. Was the pleading sufficient to notify the state that it was defending a section 1983 claim?

2. Can attorney's fees be awarded for alleged property rights deprivation if no actual deprivation occurred?

3. Does a violation of state law give rise to a section 1988 claim for attorney's fees?

## DISCUSSION

### I

The residents claim that, as prevailing parties in a civil rights case, they should be awarded attorney's fees. The Civil Rights Attorney's Fees Act of 1976 (42 U.S.C. § 1988) provides for the award of attorney's fees to prevailing parties in civil rights cases:

In any action or proceeding to enforce a provision of section[ ] * * * 1983 * * * of this title * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs.

The issue is whether, by pleading a violation of the fourteenth amendment, the residents have alleged a constitutional violation sufficient to support a section 1983 cause of action; 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

On the basis of a state statutory procedural due process claim, the residents are attempting to obtain attorney's fees. The threshold question is whether their pleading was sufficient to notify the state that it was defending a section 1983 claim. The answer is found by examining what is *not* in the underlying case. First, the residents' complaint makes no mention of section 1983.

■ If a party fails to plead and prove a section 1983 action, its demand for attorney's fees must be dismissed. *See Ball v. School District of the City of Grand Rapids*, 641 F.Supp. 1, 2–4 (W.D.Mich.1986). In *Ball* the plaintiffs did not prove or attempt to prove a section 1983 action, although section 1983 was cited. *Id.* at 2–3. Here the residents neither cited section 1983 (which in itself is not fatal) nor attempted to prove that the hearings they received did not meet federal constitutional due process.

■ In *Ball*, after discussing the plaintiffs' failure to plead a section 1983 action, the court said:

More telling than the face of the complaint, however, was the conduct of the parties, and especially of the plaintiffs, throughout the course of the litigation. During trial, this case was presented as a straightfoward establishment clause action under the Declaratory Judgment Act. *I recall no discussion of § 1983 law whatsoever. The final opinion of this court made no mention of § 1983 and awarded no relief thereunder. Likewise, the opinions of the Sixth Circuit and the Supreme Court nowhere mention § 1983 or any other provision of the Civil Rights Act.*

*Id.* at 3 (emphasis added).

Here, as in *Ball*, the residents made no mention of a section 1983 action in their briefs or at oral arguments. Our final opinion makes no mention of section 1983. In *Ball* the court rejected a claim for attorney's fees, though the court agreed that the plaintiff might have proved a section 1983 claim:

In the opinion of this court, § 1988 only authorizes an award of attorney's fees to litigants who are successful on claims brought under § 1983 *et seq.*, not to those who *could have been* successful under § 1983 had they pursued such a claim.

*Id.* at 4 (emphasis in original).

The second glaring absence of a section 1983 claim is that the state did not raise any potential defenses available to signify its defense of such a claim. At oral argument the state asserted it had not raised defenses such as discretionary immunity because it was unaware that it was defending a section 1983 action.

In order * * * to bring a claim under 42 U.S.C. § 1983, a specific and articulable constitutional right must have been transgressed and a cognizable claim for

relief must be stated on the face of the pleading.

*Missouri ex rel. Gore v. Wochner,* 620 F.2d 183, 185 (8th Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980).

The residents failed to plead their claim with sufficient specificity. *See Anderson v. Sixth Judicial District Court, St. Louis County, Minnesota,* 521 F.2d 420, 420–21 (8th Cir.1975). Mere references to fourteenth amendment violations do not state a claim under section 1983.

## II

█ The elements necessary to establish a procedural due process section 1983 action are found in *Parrat v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981). The residents must show (1) that they had property rights, (2) of which they were deprived, (3) under color of state law; and (4) that the loss was suffered without due process of law. *See id.* at 537, 101 S.Ct. at 1914. The residents suffered no deprivation, and they were accorded due process of the law through the hearings and injunctions.

The residents argue that they do not need to be evicted from the Home to show that they were deprived of a property right, for if actual loss were a requisite, parties could not bring a section 1983 action until after the threatened deprivation occurred. The residents take the position that because they obtained injunctive relief, ordering a contested case hearing prior to transfer/discharge, that is sufficient to establish a procedural due process action. Because they had to litigate to obtain the process due them, they claim entitlement to the attorney's fees expended. Yet the necessity of their litigation is exactly the next question at issue, as well as their posture as prevailing parties.

The chronological sequence of events can be an important factor, though not necessarily the definitive one in determining the effects of the suit. *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978). The initial appeal did not come from an agency decision. Instead, suit was filed upon receipt of letters indicating transfer or discharge.

The residents challenged the *process* by which they were to be transferred. The residents initiated the suit before the review committee hearings even occurred. After they occurred, no one appealed from the process because no one was dissatisfied with the findings. There was no disagreement that further rules were needed, and the Commissioner indicated his intent to promulgate them. The court of appeals also made it clear that the declaratory judgment the residents sought was premature. *Gregg* I, 380 N.W.2d at 149.

To have a settled pronouncement and thereby avoid a "multiplicity of suits," the court of appeals addressed the issue of the rules. *Id.* at 149. The issue of whether contested-case hearings are required was settled as a preventive measure. The determination was not necessary to bring about the change, because the Commissioner was willing to make the change and had already acknowledged its need. Yet the issue remained a live controversy because, until the rules were in place, the events were "capable of repetition evading review." *Id.* at 149 (quoting *Matter of Peterson,* 360 N.W.2d 333, 335 (Minn.1984)). The ruling was made to cover the period of time during which the rules were being promulgated.

While the good faith of the Home is not a controlling factor in determining whether or not the residents merit an award, our decision must conform with the policy underlying the award of attorney's fees in civil rights cases. *See Nadeau,* 581 F.2d at 280. "Attorney's fees are not designed merely to penalize defendants, * * * but to encourage injured individuals to seek judicial relief." *Id.* at 280. There has been no injury to the residents; no unfavorable decisions were made and no deprivation occurred.

The residents argue that Congress' purpose in authorizing such fee awards was to encourage compliance with the enforcement of civil rights laws, and therefore the act " 'must be liberally construed to achieve [those] ends.' " *Reome v. Gottlieb,* 361 N.W.2d 75, 77 (Minn.Ct.App.1985) (quoting *Dennis v. Chang,* 611 F.2d 1302,

1306 (9th Cir.1980)), *pet. for rev. denied* (Minn. July 11, 1985). In support of that proposition, the residents cite cases showing that attorney's fees may be awarded for obtaining injunctive relief. *See Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978); *Davis v. Village Park II Realty Co.*, 578 F.2d 461 (2nd Cir.1978). However, both of these cases are bill of rights cases. In *Davis* an injunction was granted to prevent Davis' eviction. *Davis*, 578 F.2d at 462. Davis claimed the threatened eviction was a result of her exercise of first amendment rights. *Id.* at 464. *Helgemoe* was an eighth amendment case, not a procedural due process case. *Helgemoe*, 581 N.W.2d at 277.

## III

■ Last, the residents contend that even if they prevailed only on a statutory claim, they are still entitled to attorney's fees. The cases that the residents cite for this proposition involve alleged violations of federal law and are therefore not on point. An award of attorney's fees is proper if state procedure violates federal law. In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), a recipient of Aid to Families with Dependent Children (AFDC) challenged Connecticut's AFDC regulations, alleging violation of the Social Security Act, the AFDC statutes and the equal protection and due process clauses of the fourteenth amendment. *Id.* at 125, 100 S.Ct. at 2572. The recipient there claimed alleged violations of *federal* law; the residents in *Gregg* I, however, alleged a *state* statutory due process claim.

The controlling analysis is found in *Missouri ex rel. Gore v. Wochner*, 620 F.2d 183, 185 (8th Cir.1980):

> Rights which derive solely from state law * * * cannot be the subject of a claim for relief under 42 U.S.C. § 1983

In *Wochner* two school officials alleged violations of their civil rights resulting from the termination of their employment with the city's Department of Health and Hospitals. *Id.* at 184. The court held that because they did not seek redress for any federally protected right, the violation of

any of their rights that might arise exclusively by failure to comply with several procedures provided by city charter, ordinances and regulations did not rise to the level of federal constitutional violation. *Id.* at 185.

We found in *Gregg* I that the residents had a constitutional due process right to a contested-case hearing before their discharge, because the residents had a statutory entitlement, once admitted to the Home, to continue residing there. *Gregg* I, 380 N.W.2d at 151. The trial court erroneously concluded that the residents' federal constitutional rights had been violated by not giving them state contested-case hearings. The correct interpretation is that the Home residents had no federal constitutional right to a particular kind of state proceeding; the federal constitution guarantees only an adequate hearing, not a specific kind of hearing. "There is no constitutionally protected interest in state law procedures." *Odell v. City of Eagan*, 348 N.W.2d 792, 798 (Minn.Ct.App.1984) (citing *Vruno v. Schwarzalder*, 600 F.2d 124 (8th Cir.1979)). The residents' reliance on dicta in *Gregg* I is misplaced. The residents' statutory entitlement is derived from state law, the Minnesota Veterans Preference Act, Minn.Stat. § 197.46 (1984), and Minn. Stat. §§ 14.02, subd. 3; 14.58 (1984).

We find no support for the proposition that attorney's fees are granted for state statutory procedural due process claims. The cases that the residents cite either deal with substantive due process issues or federal statutes. *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), challenged a federal statute, the Education of the Handicapped Act. There a school board refused to grant a full hearing before terminating a student's funding. *Id.* at 1008, 104 S.Ct. at 3466. That action constituted a deprivation of substantive constitutional rights. No such refusal of a substantive constitutional claim existed in *Gregg* I.

*People v. 11 Cornwell Co.*, 718 F.2d 22 (2d Cir.1983), involved pendant jurisdiction; substantive, not procedural, issues; and a federal civil rights claim charging discrimi-

nation in failure to sell a property. *Id.* at 23. The case that does deal with an agency is *Kimbrough v. Arkansas Activities Association,* 574 F.2d 423 (8th Cir.1978), in which a black high school student was declared ineligible for interscholastic athletic competition. *Id.* at 425. Kimbrough alleged that the association's rule was unconstitutional on its face and appealed from an agency ruling that he was ineligible to play. *Id.* His appeal was from a decision that refused him the right to participate. That denial made the issue substantive. In contrast, the residents never appealed any decision made by the Home. Therefore, the claim is strictly a state procedural due process claim and not eligible for an award of attorney's fees.

## DECISION

The trial court erred in ordering an award of attorney's fees, because the claim is based solely on a state statutory procedural due process issue. We also find that the pleading was insufficient to notify the state that it was defending a section 1983 claim.

Reversed.