L.K., et al., Petitioners, Appellants,

v.

William GREGG, in his capacity as Commissioner of Veterans Affairs, et al., Respondents.

No. CX–87–949.

Supreme Court of Minnesota.

June 10, 1988.

M. Francesca Chervenak, Laurie N. Davison, Kathleen M. Davis, Minneapolis, for petitioners, appellants.

Merwin Peterson, Asst. Atty. Gen., St. Paul, for respondents.

Elizabeth M. Schmidt, Edina, amicus curiae, for NAACP.

Carolyn Chalmers, Minneapolis, amicus curiae, for Legal Aid and Defender Assoc.

Mark A. Bohnhorst, St. Paul, amicus curiae, for Homer Jarvis.

Mary L. Stanislav, Asst. Atty. Gen., St. Paul, amicus curiae, for Com'r of Human Services.

YETKA, Justice.

Appellants, current and former residents of the Minnesota Veterans Home, appeal

from the court of appeals' reversal of an award of attorney fees pursuant to 42 U.S.C. § 1988 (1982). We reverse and award attorney fees.

The award of fees is based on the work of appellants' attorneys in *L.K. v. Gregg,* 380 N.W.2d 145 (Minn.App.), *petition for rev. denied* (Minn. Mar. 14, 1986) (hereinafter *Gregg I*), a prior action for declaratory and injunctive relief. In *Gregg I,* the veterans sought to prevent the home from discharging or transferring them without promulgating rules or granting pre-deprivation hearings. The veterans claimed that the home's proposed procedures and inadequate notice violated Minnesota statutes and their right to due process of law as guaranteed by the United States and Minnesota Constitutions. In the prior case, the court of appeals had ordered the trial court to enter judgment for the veterans, granting substantially all the requested relief. This court denied respondents' petition for further review. The district court, on remand, entered judgment for the veterans and granted their motion for attorney fees. Respondents appealed and the court of appeals reversed the fee award. The veterans' petition for further review was then granted by this court.

Because the availability of attorney fees under section 1988 is based on the result in *Gregg I,* we begin with an analysis of the underlying action, the result and the rationale for the court's decision. Before proceeding with our analysis, however, we note that our denial of the petition for further review in *Gregg I* should not be construed as an expression of our approval of either the result or its supporting rationale. As we have stated, "denial of a petition for further review means no more than that the supreme court has declined, at that time and for whatever undisclosed reasons, to consider the matter." *Murphy v. Milbank Mut. Ins. Co.,* 388 N.W.2d 732, 739 (Minn.1986). *See also Mattson v. Underwriters at Lloyds of London,* 414 N.W. 2d 717, 722 n. 9 (Minn.1987). Thus, we express no opinion regarding the correct-

ness of the court's resolution of the constitutional question in *Gregg I.* However, the underlying issue, which is the basis of the attorney fees in the present case, was decided in *Gregg I* and must now be accepted as the law of the case. We will not re-examine nor will we allow the parties to relitigate the same issue on this appeal. *See Minnesota Power & Light Co. v. Minnesota Pub. Util. Comm'n,* 342 N.W.2d 324, 327 (Minn.1983); *Lange v. Nelson–Ryan Flight Serv., Inc.,* 263 Minn. 152, 155, 116 N.W.2d 266, 269 (1962). While we may not necessarily agree with the result in *Gregg I,* we, as well as the parties, are bound. Therefore, we begin with a discussion of *Gregg I.*

## I.

The case began in 1984 when, due to space shortages and an increasing need for nursing home care, the legislature authorized the Commissioner of Veterans Affairs (respondent Gregg) to convert a residential building at the home from a domiciliary to a nursing care facility. Minn. Laws 1984, ch. 654, art. 2, § 19(b). The conversion required the transfer or discharge of the veterans who were currently residing in the building.

Appellants are disabled or elderly veterans who reside or have resided at the Minnesota Veterans Home. Respondents are William Gregg, Commissioner of Veterans Affairs, and Charles Turnbull, Administrator of the home. The home was created by Minnesota statute and is operated by the Minnesota Department of Veterans Affairs as a residence for veterans who meet statutory requirements. *See* Minn. Stat. § 198.01, *et seq.* (1984).

On August 10, 1984, the home's administrator (respondent Turnbull) sent a letter to selected residents notifying them that they would be discharged or transferred "between now and September 12, 1984," approximately 1 month later. The letter further said that a planning session would be held "within two weeks." In addition, the letter indicated that, if the resident was

dissatisfied after the planning session, he could "petition for review" to a review committee. The review committee, however, did not exist at the time the suit was filed. No specific procedures for appeal were set out.

The Minnesota Department of Health notified the veterans home that the original notice was inadequate under the Patient's Bill of Rights, Minn.Stat. § 144.651, subd. 29 (1986). Thus, a second notice was sent, giving the necessary 30-day notice of the transfer or discharge, but giving no further specific information about appeal rights.

On August 28, 1984, four of the veterans filed an action in Hennepin County District Court challenging the transfer/discharge proceedings. The veterans alleged, *inter alia,* that the inadequate notice received and the procedures proposed violated their rights under Minnesota statutes and would deprive them of due process of law as guaranteed by the fourteenth amendment of the United States Constitution and article I, section 7 of the Minnesota Constitution. The veterans further alleged that they were entitled to a hearing, under due process, prior to their transfer/discharge under the fourteenth amendment. Finally, they claimed that, under the Minnesota Administrative Procedures Act, Minn.Stat. § 14.02, subd. 3 (1984) (MAPA), the hearing required by the constitution must be a contested case hearing under MAPA, Minn. Stat. § 14.57, *et seq.* (1984). The veterans sought declaratory and injunctive relief, including: a declaration that the lack of proper procedures and the inadequate notice violated their federal due process rights; an order that respondents grant contested case hearings prior to discharge; a temporary and permanent injunction prohibiting discharge/transfer until rules had been promulgated and contested case hearings held; and attorney fees pursuant to 42 U.S.C. § 1988 (1982). The complaint did not specifically allege that relief was requested pursuant to 42 U.S.C. § 1983 (1982).

After the suit was filed, respondents sent a third letter, extending the transfer/discharge date to September 30, 1984. The letter specifically stated that this extension was a result of this lawsuit. On September 27, 1984 (1 day before the veterans' motion for a temporary restraining order and temporary injunction was scheduled), respondents issued written review procedures. On October 2, 1984, the district court denied the veterans' request for a temporary injunction and class certification, but granted a temporary restraining order enjoining discharge or transfer pending further order of the court. Respondents did not object to entry of the temporary restraining order.

In January 1985, the veterans moved for partial summary judgment. Respondents subsequently made a cross-motion for summary judgment. In April 1985, the district court granted respondents' motion solely on the ground that the court lacked jurisdiction. The trial court did not reach the merits of any of the federal or state claims.

The veterans appealed the denial of summary judgment and the earlier denial of class certification to the court of appeals. The court reversed the district court. *Gregg I,* 380 N.W.2d 145. The court of appeals held: (1) respondent Gregg was required to promulgate rules regarding discharge/transfer under Minn.Stat. § 198.06 (1984); (2) respondent Turnbull was not authorized to discharge/transfer any residents except pursuant to the required rules, *Gregg I,* 380 N.W.2d at 150; (3) the veterans possessed a due process right to a hearing before their discharge/transfer to protect their state-created entitlement to continued residency; and (4) under MAPA, the procedures required are contested case procedures. *Id.* at 150–51. This court denied respondents' petition for further review.

On remand, the district court entered judgment for the veterans and granted their motion for attorney fees pursuant to 42 U.S.C. § 1988 (1982) in the amount of $28,925.65.

Respondents appealed the award of attorney fees, although not the reasonableness or the amount, to the court of appeals. The sole issue presented was whether the veterans had prevailed in an action to enforce section 1983 and were, therefore, entitled to attorney fees under section 1988. The court of appeals reversed the award of fees in *L.K. v. Gregg,* 413 N.W.2d 833 (Minn.App.1987) (*Gregg II*).

The court of appeals held that the veterans' pleading was insufficient to give notice of a claim under section 1983. *Id.* at 836–37. The court also held that attorney fees were unavailable because the veterans had prevailed only on a state statutory procedural due process issue. *Id.* at 838. On November 4, 1987, the court of appeals also denied the veterans' motion for attorney fees on appeal. We subsequently granted the veterans' petition for further review. At the same time, we granted permission for the Minneapolis branch of the NAACP and the National Legal Aid and Defender Association to file briefs as *amici curiae.* In addition, on March 22, 1988, we granted permission for the parties in *Jarvis v. Levine,* 418 N.W.2d 139 (Minn. 1988), to file briefs also as *amici curiae.*[1]

The issues raised on appeal are:

I. Is an action for declaratory and injunctive relief, brought against state officials acting in their official capacities, that alleges the defendants' actions deprived plaintiffs of due process of law as guaranteed by the fourteenth amendment to the United States Constitution, but in which the pleadings do not specifically rely on 42 U.S.C. § 1983 (1982), an "action to enforce a provision of § 1983," allowing the recovery of attorney fees pursuant to 42 U.S.C. § 1988 (1982)?

II. If so, are the veterans "prevailing parties" in an action to enforce section 1983?

A. Are the veterans entitled to a recovery of attorney fees because they prevailed on a constitutional claim, establishing a threatened deprivation of federal rights to due process of law when no deprivation actually occurred?

B. In the alternative, are the veterans entitled to a recovery of attorney fees because they prevailed on a state statutory claim which was pendent to a federal constitutional claim when the federal claim has not been decided?

## II.

The veterans' claim for attorney fees was brought pursuant to 42 U.S.C. § 1988 (1982) (hereinafter section 1988), which provides: "In any action or proceeding to enforce a provision of sectio[n] * * * 1983 * * * of this title * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Section 1983, in turn, provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any * * * State or Territory." 42 U.S.C. § 1983 (1982).[2]

The threshold question before the court then is whether the veterans' suit was brought "to enforce a provision" of section 1983 when the statute was not specifically

---

**1.** Appellant Jarvis had a motion for attorney fees pursuant to 42 U.S.C. § 1988 (1982) pending before this court which presented similar issues regarding the availability of attorney fees under section 1988 when a party has prevailed on the basis of state, rather than federal, law.

**2.** Section 1983 provides in full:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

relied on or cited in the pleadings. If the allegations cannot support an action under section 1983, attorney fees are not available and the remaining questions need not be reached.

If we find, however, that the action was brought to enforce a provision of section 1983 because the complaint sufficiently alleged a deprivation of federally protected rights, the following issues also need to be addressed. First, to recover fees, the veterans must be "prevailing parties" in the action. This question can be answered in two ways: (1) Did the veterans prevail on a constitutional claim by demonstrating a threatened deprivation of federal rights? If so, fees are available under section 1988. (2) In the alternative, even if the veterans did not prevail on their constitutional claim, did they prevail on a state statutory claim which was pendent to the federal constitutional claim? If so, fees are available if the two claims were "substantially related" and if the federal claim remains unresolved and is "substantial." *See, e.g., Seaway Drive-In, Inc. v. Township of Clay,* 791 F.2d 447 (6th Cir.1986); *Carreras v. City of Anaheim,* 768 F.2d 1039 (9th Cir.1985).

The court below reversed the district court's award of attorney fees based in part on its determination that the veterans' pleadings failed to notify the state that it was defending an action under section 1983. *Gregg II,* 413 N.W.2d at 836. The court acknowledged that the veterans had pleaded a violation of the fourteenth amendment, but, nevertheless, concluded that this allegation was insufficient to state a claim under section 1983. *Id.* at 837.

■ The court did not appear to examine the substance of the veterans' claim in depth in making its initial determination,

but instead appeared to base its conclusion primarily on what was *not* present in the case. First, the court found significant the fact that the veterans failed to mention section 1983 specifically in their pleadings. Second, the court found the pleadings insufficient to support an action under section 1983 in part because of the state's failure to raise what the court believed to be potential defenses. *Id.* at 836.[3]

■ We believe the better practice would be for the court to look at the *substance,* rather than the form, of the underlying action in making its determination of whether the claim is cognizable under section 1983. The U.S. Supreme Court has required only two allegations to state a cause of action under section 1983. A plaintiff must allege: (1) that a person has deprived him or her of a federal right and (2) that the person so depriving acted under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed. 2d 572 (1980). *See also Americans United for Separation of Church and State v. School Dist. of City of Grand Rapids,* 835 F.2d 627, 632 (6th Cir.1987).

The court below did not directly apply this standard, but correctly stated: "In order * * * to bring a claim under 42 U.S.C. § 1983, a specific and articulable constitutional right must have been transgressed and a cognizable claim for relief must be stated on the face of the pleading." *Gregg II,* 413 N.W.2d at 836–37 (*quoting Missouri ex rel. Gore v. Wochner,* 620 F.2d 183, 185 (8th Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 218, 66 L.Ed.2d 96 (1980)). The court then concluded that the veterans' claim was not sufficiently specific, but was, instead, a "mere reference" to a fourteenth amendment violation. In support of this

---

**3.** The court's statement—that the state failed to raise the defense of discretionary immunity—is puzzling in that the underlying action is for declaratory and injunctive relief rather than for damages. Discretionary or qualified immunity is not available as a defense in such actions or in the subsequent action to recover attorney fees. *See Pulliam v. Allen,* 466 U.S. 522, 543–44, 104 S.Ct. 1970, 1981–82, 80 L.Ed.2d 565 (1984)

(judicial immunity from *damages* no bar to prospective *injunctive* relief *or* award of *attorney fees* ). Thus, the court erred in considering this as a relevant factor. In addition, the complaint specifically requested attorney fees pursuant to section 1988. Therefore, even though section 1983 was not mentioned, the state was on notice from the inception of the action that attorney fees were at issue.

determination, the court cited *Anderson v. Sixth Judicial Dist. Ct., St. Louis County, Minnesota,* 521 F.2d 420, 420–21 (8th Cir. 1975). However, *Anderson* may be easily distinguished from the present case and seems to furnish little guidance. There, plaintiffs brought a *pro se* action to enjoin allegedly unconstitutional methods used in domestic relations cases. Their complaint merely recited the practices used and requested relief, but set forth no facts in support of their allegations of constitutional violations. The court dismissed the action as failing to meet the minimum standards required to establish a civil rights claim. *Id.* at 421.

The veterans' complaint, in contrast, sets out adequately specific facts in support of their allegations. The complaint also sets out a "specific and articulable constitutional right" as required by *Wochner, supra.* The veterans specifically alleged, *inter alia,* that the discharge and transfer procedures would deprive them of due process of law as guaranteed by the fourteenth amendment. The veterans also specifically alleged that the fourteenth amendment guaranteed them a pre-deprivation hearing, *i.e.,* before their transfer or discharge. In addition, the complaint sets out a "cognizable claim for relief." *Wochner, supra.* The prayer for relief requests a declaratory judgment determining that respondents' actions violated the veterans' rights to due process of law. The veterans also requested an injunction prohibiting their discharge or transfer without a prior hearing. Finally, the veterans specifically requested attorney fees pursuant to section 1988.

These allegations meet the first prong of the requirement set out by the Supreme Court in *Gomez, supra.* The veterans have a statutory entitlement in continued residency at the home. Minn.Stat. §§ 198.-

01, .022, .03 (1984).[4] Under the holding of *Gregg I,* the veterans appear to have a constitutionally protected right to an adequate hearing before their discharge or transfer. *Gregg I,* 380 N.W.2d at 151. *See Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). *See also Cable Communications Bd. v. NorWest Cable Communications Partnership,* 356 N.W.2d 658, 666 (Minn.1984) (liberty or property interest must be at stake to have due process right to a hearing). An allegation that the state's threatened actions would deprive the veterans of due process of law, as guaranteed under the fourteenth amendment, is clearly an allegation of a deprivation of a federal right.[5]

It is true, however, that the veterans did not specifically allege that respondents acted "under color of state law," the second requirement set out in *Gomez. Compare Americans United,* 835 F.2d at 628 (specific language of section 1983 quoted in complaint). When the substance of the complaint is considered as a whole, however, it is clear that this point cannot be seriously disputed. The underlying challenge is to the entire system established by state officials acting in their official capacities. In fact, respondents concede as much on appeal.

Finally, we consider the adequacy of the pleadings in light of their intended purpose. Under the Rules of Civil Procedure, only notice pleading is required. The rules do not require adherence to a mechanistic and rigid formula. Instead, the pleadings are liberally construed to insure that the defending party is given adequate notice of the claim. *LeRoy v. Marquette Nat'l Bank of Minneapolis,* 306 N.W.2d 815 (Minn.1981). Similarly, in civil rights cases especially, pleadings should be liberally

**4.** The state concedes that the veterans have a protected property interest.

**5.** An award of attorney fees would not automatically follow from the court's conclusion that the complaint was sufficient under section 1983. The veterans also must "prevail" in the action in some way in order to recover fees. Our initial inquiry, however, is not whether the veterans have established that their rights were violated and whether they subsequently succeeded on the merits. Instead, the question is simply whether the complaint is sufficient to state a cause of action under section 1983.

construed. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Here, the state had notice that the veterans claimed a threatened violation of both their federal and state rights to due process of law by the use of the proposed procedures. More important for the purposes of this appeal, the state had specific notice that an award of attorney fees under section 1988 was at issue.

The state's concern that it was somehow prejudiced by the mere failure of the veterans to identify section 1983 in the pleadings appears to be unwarranted. As already noted, the underlying action is exclusively for injunctive and declaratory relief rather than for damages. Therefore, defenses such as discretionary or qualified immunity are unavailable either in the original action or in an action for attorney fees. Since damages are not at stake, it is difficult to determine what differences in evidence would be necessary if section 1983 had been specifically alleged. As the court pointed out in *Americans United*, 835 F.2d at 632, "[a] reference to section 1983 would have added nothing to what was already before the court in this action."

In summary, when the pleadings are considered as a whole, the veterans, while not specifically citing to section 1983, appear to have met the minimum requirements for establishing a claim for relief thereunder as enunciated by the United States Supreme Court. We do believe, however, that, in future cases, it would be the preferred practice specifically to plead 42 U.S. C. §§ 1983, 1988 (1982).

### III.

■ Respondents' claim that the veterans are not prevailing parties is without merit. Clearly, the veterans' positions were upheld at every level. They received substantially all the relief they requested in *Gregg I*. We see little purpose in reciting the facts once again.

The court below, however, reversed the fee award, holding that the veterans suc-

ceeded only in proving a deprivation of state statutory rights. *Gregg II*, 413 N.W. 2d at 838. The veterans claim that this is a mischaracterization of the result in *Gregg I*. We agree.

In *Gregg I*, the court of appeals held that the veterans had a constitutionally protected property right, or statutory entitlement, to continue residing in the home which was created under Minn.Stat. §§ 198.-01, .022, .03 (1984). *Gregg I*, 380 N.W.2d at 151. The court then went on to hold that the veterans were, therefore, entitled to a full contested case hearing before their discharge or transfer from the home. The respondents at oral argument appeared to concede that the veterans were entitled to a *hearing* or review procedure of some sort, even if not a contested case hearing, before a final transfer or discharge.

However, the court of appeals, in *Gregg I*, already held that the veterans had a protected property right which entitled them to a contested case hearing prior to their discharge or transfer. The court specifically found the right to a contested case hearing to be protected under the due process clause of the federal Constitution. *Gregg I*, 380 N.W.2d at 151.

We do believe that there is some merit in the court of appeals' subsequent characterization of that language in *Gregg I* as mere *dicta*. *Gregg II*, 413 N.W.2d at 838. It appears that the court, in *Gregg II*, is correct in stating that the veterans had no federally protected right to the particular kind of hearing specified in MAPA. The fact that certain procedures are established under state law does not necessarily mean that the procedures themselves acquire a constitutional dimension. *Vruno v. Schwarzwalder*, 600 F.2d 124, 130–31 (8th Cir.1979) (quoting *Slotnick v. Staviskey*, 560 F.2d 31, 34 (1st Cir.1977)). The federal Constitution undoubtedly requires an "adequate" hearing before the veterans may be finally deprived of their residence. The parameters and timing of the constitutionally required hearing need not be addressed at this time, however, because we

are convinced that the contested case hearings required under state law exceed federal due process requirements.[6] *Compare Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (post-deprivation hearing and minimal procedures sufficient before final termination of federal disability benefits) *with Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (pre-deprivation hearing with full procedures required before termination of federal welfare benefits). Nevertheless, as we have stressed already, the court's holding in *Gregg I* must be accepted as the settled law of the case. We will not allow respondents to relitigate the same issue. Our comments here are intended only to make clear our view that we are merely applying the law of this case. By so doing, we do not intend to give unwarranted precedential effect to our denial of the petition for review in *Gregg I.*

Moreover, we have the impression that this case was unnecessarily litigated by both sides. Respondents constantly attempted to comply with every demand whether it be notice or review or hearing. Once the review procedures were established and operating, continual litigation appears to have been pursued nevertheless. To be candid, the resolution of the issues of notice and of a meaningful review were established; yet, the veterans proceeded with their action for injunctive relief even after respondents had issued written review procedures. Respondents did not even object to entry of a temporary restraining order; yet, the veterans proceeded to move for partial summary judgment.

However, while the veterans may have been somewhat overzealous when respondents seemed willing to concede on some issues, it also does not appear that respondents made any serious attempts to settle the case. The veterans have prevailed and achieved all the relief they were seeking as a result of this litigation. Respondents seem to argue now that the veterans would have been given full hearings, although not contested case hearings, *without* any litigation at all. The difference between these positions, while obviously legally significant, does not appear to be insurmountable. Three and one-half years of litigation seems to have been excessive. As a result, "the real losers * * * are the taxpayers who * * * ha[ve] to pay the ultimate cost of this litigation." *Jaquette v. Black Hawk County, Iowa,* 710 F.2d 455, 464 (8th Cir.1983) (Bright, J., concurring and dissenting).

We want to put forth our view that, in cases such as this involving a public body, both sides should act reasonably and quickly in attempting to settle the issues as soon as possible without litigation. It seems to us that a consent decree, for example, could have been appropriate in these circumstances. While there is no evidence of bad faith on either side, there is also no indication on the record before us that either party attempted a settlement. In short, it appears that some or even much of this litigation could have been avoided.

Thus, while we conclude that plaintiffs must prevail because the parties are bound by the law of the case, we believe this litigation should come to a conclusion forthwith. Accordingly, we affirm the trial court's award of Twenty-eight Thousand, Nine Hundred Twenty-five and 65/100 Dollars ($28,925.65).[7] In addition, we award the sum of Two Thousand and No/100 Dollars ($2,000) for attorney fees for the entire appellate process. While this sum might appear at first glance to be modest, we have outlined our concerns that this case went further than necessary. Moreover, many of the briefs and arguments made in the appellate courts were rehashes of the arguments already made and prepared in trial court.

The court of appeals is reversed and a total award of Thirty Thousand, Nine Hun-

---

**6.** We also express no opinion whether or not the veterans are entitled to contested case hearings under these circumstances.

**7.** Respondents have not challenged the reasonableness or the amount of the award.

dred Twenty-five and 65/100 Dollars ($30,925.65) is awarded to appellants plus their printing costs and filing fees on appeal. No further fees or costs will be awarded.